## COMMONWEALTH *versus* ENOCH CHAPIN.

Rivers are considered navigable as far as the tide ebbs and flows, and not navigable above that point. So *held* in relation to Connecticut river.

In a navigable river the right of fishing is common to all the subjects, under such restraints as the government may impose.

In a river not navigable the proprietor of the adjoining soil has an exclusive right of fishery in front of his land to the thread of the river; except so far as this right has been qualified by legislative regulations. But this right is limited to the taking of fish, and does not carry with it a right to prevent the passage of fish to the lakes and ponds for the multiplication of the species.

An indictment at common law for a nuisance does not lie for obstructing the passage of fish by a dam built across a river not navigable, but recourse must be had to the remedy provided by statute.

The public have an easement for passing in boats, &c., in rivers, which, though not classed with navigable rivers, are in fact navigable above the flow and reflow of the tide.

THIS was an indictment for a nuisance by erecting a dam across the Connecticut river between Northampton and South Hadley. The indictment alleged that the river, at that part of it, was a public river, and that by the dam the passage of boats, rafts, &c., up and down the river had been impeded, and the passage of salmon, shad and alewives, which from time immemorial had passed up the river to cast their spawn, had been obstructed, and the adjacent meadows had been covered with stagnant water, whereby the health and lives of the citizens inhabiting in the neighbourhood were endangered.

At the trial, before *Wilde* J., the defendant objected, that this being an indictment at common law, the dam could not be considered as a nuisance on account of the obstruction to the passage of the fish; but the judge, for the purpose of reserving the question for the whole Court, instructed the jury that they might find a verdict against the defendant, if they should be of opinion that the fish were obstructed in their passage up and down the river, although they should be satisfied that the dam was no obstruction to the passage of boats, &c., and did not endanger the health of the citizens living in the vicinity.

The jury returned a verdict against the defendant, and stated that they found, from the evidence, that the dam was no obstruction to the passage of boats, and that it did not

203

endanger the health of the citizens, but that it was an obstruc tion to the passage of the fish.

*Bliss* and *Strong*, for the defendant, admitted that the rivei above the ebbing and flowing of the tide might be a public river so far as regards the passage of boats, &c., but they contended, that in respect to the fish, it was a private river , and although the legislature might have a right to regulate the passage of the fish, yet they said that obstructing the passage of fish by a dam built across a river not navigable, had never been held to be indictable as a nuisance at common law. The remedy is given by our provincial statutes. No indictment for obstructing fish is found in Wentworth, Chitty, and other books of precedents. They cited Anc. Charters &c. 148 ; Hale's treatise *De Jure Maris*, in Hargr. Law Tr. 5, 6, 8, 11 ; *People v. Platt*, 17 Johns. R. 211 ; *Adams v. Pease*, 2 Connect. R. 481 ; *Hooker v. Cummings*, 20 Johns. R. 90 ; *Stoughton v. Baker*, 4 Mass. R. 522 ; *Commonwealth v. Knowlton*, 2 Mass. R. 530 ; *Commonwealth v. Ruggles*, 10 Mass. R. 391 ; *Commonwealth v. Charlestown*, 1 Pick. 180 ; 2 Hawk. P. C. c. 75 ; 4 Bl. Com. 167 ; Bac. Abr. *Nusance, A* ; *James v. Hayward*, W. Jon. 221 ; *Hind v. Manfield, Noy*, 103 ; *Rex v. Smith*, 3 Keb. 640, 759 ; *Case of Chester Mill*, 10 Co. 137 *b* ; Com. Dig. *Prærogative, D* 50 ; *Rex v. Smith*, 2 Doug. 441 ; *Prov. Stat. 8 Ann. c. 3* ; 13 *Geo.* 1, c. 9 ; 15 *Geo.* 2, c. 6 ; 17 *Geo.* 2, c. 5 ; 19 *Geo.* 2, c. 2.

*Davis*, (Solicitor-General), *contrà*. The Connecticut, at the place where the dam was built, though above the tide waters, is a public river. The common law of England in respect to rivers not navigable is not applicable to the large rivers in this country. *Carson v. Blazer*, 2 Binney, 475 ; *Palmer v. Mulligan*, 3 Caines's R. 307 ; *Adams v. Pease*, 2 Connect. R. 484. This being then a public river, a right to a free fishery in it is vested in the public. 2 Tucker's Blackstone, 39 ; Hargr. note 181 to Co. Lit. 122. The right of the public to the fishery rests on the same foundation as the right of passage on the river, and the same remedy lies when either right is obstructed To obstruct the passage of the fish, therefore, is a nuisance indictable at common law

The *Prov. Stat.* 8 *Ann c.* 3, which seems to be grounded on *magna charta*, has not been revised, and it has been recognised by the Court as being still in force. In *Commonwealth v. Ruggles*, 10 Mass. R. 393, *Sewall* J. says, that the obstruction " being declared by that statute to be a common nuisance, the statute attaches to it all the remedies which the common law provides in that case. The special remedy by the statute is cumulative." If the waters are public, whether they are tide waters or not is immaterial in regard to the rights and remedies of the public in the case of obstructions. *Weld* v. *Hornby*, 7 East, 195 ; *Stoughton* v. *Baker*, 4 Mass. R. 527 ; *Coolidge* v. *Williams*, ibid. 140 ; *Commonwealth* v *Charlestown*, 1 Pick. 182 ; *Shaw* v. *Crawford*, 10 Johns. R. 238.

PARKER C. J. delivered the opinion of the Court. [After stating the case.] So that the question we have to determine is, whether the erection and continuance of a dam across Connecticut river, whereby the passage of fish up the river is obstructed, is indictable as a nuisance at common law, it not being averred to be contrary to any statute of the commonwealth.

It has been argued by the Solicitor-General, that the Connecticut is a public navigable river, which all the citizens nave a right to use, as well for the purpose of taking fish therein, as for transportation of water craft up and down the same ; so that any obstruction to either of those uses, is contrary to law and a nuisance. It does not appear by the facts reported, or by the verdict, whether at the place where the dam is built the river is navigable or not ; we may take it for granted, however, that the place is above the flowing and ebbing of the tide, and that being the case, it is not a navigable river there, within the meaning of the term navigable as understood by the common law. The doctrine of Lord *Hale*, as laid down in his treatise *De Jure Maris*, has been approved of and adopted as the law of England, of New York, Connecticut, and of this commonwealth ; and he divides rivers into two classes, navigable and not navigable. They are considered navigable where the tide ebbs and flows, and not

Commonwealth
v.
Chapin.

*Sept. 25th*
1827.

navigable above that point.[1]   The former belong to the sove-reign or public, the latter may be the subject of private property.   In the former, the fishery is common to all the subjects, under such restraints as the government may impose ; in the latter, it belongs to the owners of the soil adjoining to and under the river ; for the owner of the land is owner to the thread of the river, *usque ad filum medium aquæ.*   *Vide* Hargr. Law Tracts, 6, 7, 8 ; Davies's Rep. 152 ; *The People* v. *Platt*, 17 Johns. R. 209 ; *Adams* v. *Pease*, 2 Connect R. 481 ; *Carter* v. *Murcot*, 4 Burr. 2162.

This doctrine, however, is denied in Pennsylvania to be applicable to their great rivers, for they are considered public property in regard to all their uses, wherever they can be applied to any public benefit, whether the tide ebbs and flows there or not ; so that in that State the fishery in the rivers, as well as in the sea, is common to all the citizens.   We do not consider ourselves at liberty to depart from the common law in this respect, any further than the ancient usages and course of legislation in this commonwealth will justify us. And to a certain extent, without doubt, the property of the owners of the land on the banks of rivers is qualified, as well by the same common law itself, as by the ancient customs and legislation of our own government.

The right of passage and of transportation upon rivers not strictly navigable, belongs to the public, by the principles of the common law ; but the right of fishery remains unrestricted, so that each proprietor of the land adjoining has a several or exclusive right of fishery in the river, immediately before his land, down to the middle of the river, and may prevent all others from participating in it, and will have a right of action against any who shall usurp the exercise of it without his con-sent.[2]

And yet it appears that this common law right of several fishery in the owners of land bordering on rivers not naviga-ble, is subject to a reasonable qualification, in order to pro-

---

[1] See *Commonwealth* v. *Charlestown*, 1 Pick. (2d ed.) 186, n. 1.

[2] See 3 Kent's Comm. (3d ed.) 410 ; *Ingraham* v. *Wilkinson*, 4 Pick. (2d ed.) 273, n. 1 and 2 ; *People* v. *Canal Appraisers*, 13 Wendell, 355 ; *Berry* v. *Carle*, 3 Greenl. 269 ; *Spring* v. *Russell*, 7 Greenl. 273.

tect the rights of others, who, in virtue of owning the soil, have the same right, but might lose all advantage from it, if their neighbours below them on a stream or river might with impunity wholly impede the passage of fish into the lakes or ponds, where they by instinct prepare for the multiplication of the species. This restriction is founded upon that universal principle of every just code of laws, *Sic utere tuo ut alienum non lædas.* Upon the same principle, that the exclusive property in the banks and bed of a river is subject to the public easement on the waters, the right of several fishery is limited to the taking of fish, but does not carry with it the right to hinder the passing of them above, that other owners may be prevented from enjoying a similar privilege.[1]

This doctrine is fully recognised by the Court of King's Bench in the case of *Weld* v. *Hornby*, 7 East, 194. The plaintiff in that case being possessed of a sole and several fishery in a small stream not navigable, undertook to convert a brush weir, through which some of the fish might and did escape, into a solid stone weir, which was wholly impervious. This was determined to be a nuisance, because it obstructed the passage of fish higher up the stream. So that perhaps there is no doubt but that the erection of the dam complained of in this case would be an offence at common law ; and the rather, because the Connecticut is a large river extending through several States, and its banks are thickly settled, so that a great population is interested in the preservation of the fish which frequent the river.

But the common law in regard to this subject has been essentially altered by successive legislative acts, from the earliest settlement of our country, as well under the colonial and provincial, as under the present form of government. And the rights of the citizens of the commonwealth, as well as the penalties to which they may be subject, are to be determined by the effect and according to the form of this legislation, rather than by the ancient common law.

One of the earliest, and it seems, the most frequently occurring subjects of legislation, has been that of the fisheries

---

[1] See 3 Kent's Comm. (3d ed.) 411.

Common-
wealth
*v.*
Chapin.
**204**

in the numerous streams which communicate with the ocean, in this commonwealth. Though a source of profit and sup port to multitudes of people, it was found also to be a fruitful source of disorder and contention growing out of the conflicting rights of individuals, as well as of towns, which, by being owners of land, became owners of the banks of rivers which afforded convenience for fishing. The regulations which have been deemed from time to time expedient, qualify and restrain private rights on these subjects ; but beyond these regulations the right of property according to the principles of the common law is left unaffected. And furthermore, even where the restriction exists at the common law, the course of legislation has been such as to prescribe and limit the penalties for disregarding it, so as to exclude the common law entirely in relation to them.

Thus by *Prov. St.* 8 *Ann. c.* 3, all persons are prohibited from placing in or across rivers or streams, any fixed implement or machine by which the free passage of fish may be obstructed. And by *Prov. St.* 15 *Geo.* 2, *c.* 6, it is required of those who build dams across streams or rivers, to keep open, during a certain period, sluice-ways or passages for the fish to pass through. These statutes assert the right of the public to regulate the mode of taking fish even in private or several fisheries, and they also, by implication, recognise the right of proprietors to erect dams and other works on rivers or their banks, provided a passage is left through them at certain portions of the year for the escape of the fish.

By the *St.* 8 *Ann.* above cited, the erection of certain obstructions is declared to be a nuisance, and by a particular process therein specified, such obstructions are to be abated ; but those obstructions are not dams erected for permanent use, but hedges, weirs, fish-garths, stakes and kiddles, which, though not permanent, may occasion an entire interruption of the passage of fish ; and there is a special exception of dams erected for the use of mills. But by *St.* 15 *Geo.* 2, there is an implied grant or recognition of the rights of proprietors to erect and maintain dams, provided they secure a passage for the fish by sluices, &c., during the season when they are accustom-

ed to ascend the streams. This legislative provision, though altering, is not contrary to the common law, for by that the proprietors of banks might make such obstructions as were necessary to the taking of fish, leaving room enough for some of them to escape and ascend the streams. The statute only ascertains the mode in which this restriction shall be enforced, and provides the penalty for neglecting or violating it. But it is plain that the mere erecting or continuing a dam whereby fish may be obstructed, is no longer an offence, for that would be committed by any erection, however necessary for any profitable use of the fishery. The offence consists only in having a dam without providing a convenient passage for the fish during two or three months in the year, and the remedy where this requisition is not observed, is totally different from that which exists at common law for a nuisance. Instead of abating a dam which is found to be deficient, the statute pro vides a pecuniary mulct, and gives power to certain municipal officers to supervise the public interests, and see to the execution of the law.

It follows, we think, clearly, that an indictment as at common law for a nuisance cannot be maintained ; but that if the dam should be continued without opening through it, at the proper season, a passage way for the fish, the proprietors will be subject to the penalty provided by the statute.[1]

The judgment therefore is arrested, and the defendant discharged.

---

[1] See *Barden* v. *Crocker*, 10 Pick. 388.