*Rosser & Brandon,* contra.

---

### ROME RAILWAY AND LIGHT COMPANY *v.* LOEB.

The petition in this case was subject to the demurrer filed against it, and it was error to overrule such demurrer. It was also error to grant the injunction.

(*a*) A division in kind of mill property according to law, whereby a certain tract of land is allotted to one of the heirs of a decedent, together with appurtenant "mill privilege up and down the creek as far as the lands of the [decedent] extends," will convey the land so granted for the purpose, and the right to pond the water and to use so much thereof as is necessary for the purpose of operating the mill in a reasonable manner.

(*b*) A riparian owner adjacent to a mill-pond, by virtue of the grant in its deed conveying land to the middle of the original stream, is entitled to the reasonable use of the water in the mill-pond adjacent to and touching land upon which is located its power-plant for the purpose of generating electricity and power, provided such use does not materially interfere with the "mill privileges" of the lower riparian proprietor and her assigns in the reasonable use of the water in the operation of her mill.

JANUARY 13, 1914.

Equitable petition. Before Judge Maddox. Floyd superior court. September 27, 1912.

Mrs. Stella Cohen Loeb brought her equitable petition against the Rome Railway and Light Company; and the agreed statement of facts made substantially the following case: The plaintiff is the daughter of Joseph J. Cohen, and is the owner and in full and undisputed possession of about twenty acres of land lying on the south bank of the Etowah river, opposite the main portion of the City of Rome, which lies on the north bank. Through this land flows a stream known as Silver creek, which, in its descent to the river, forms a mill-site, the dam being about thirteen feet high. Silver creek rises about twelve miles south of the point where it flows into the Etowah river. Draining a considerable territory and

being joined by several tributaries, it becomes a stream of considerable size and volume, flowing about twenty-four cubic feet per second at the dam, and capable of developing about forty horse-power. The effect of the dam is to back or pond the water to a point a few feet north of the southern boundary line of land lot 317, creating a mill-pond about one and one fourth miles in length. That part of the pond on the land which Mrs. Loeb owns in fee simple is only a smaller part. The pond is not of the usual rounded shape, but is more in the form of a canal, being about one and a quarter miles in length, its average width about thirty feet, and its average depth six feet. At the time of filing the suit there was no mill-house on the property, and the dam, while not in good repair, stood as it had always stood, creating the pond as described. The mill-house was destroyed by fire in 1907. Land lot 277 adjoins and lies north of land lot 284. The land of Mrs. Loeb on which the mill-site is located lies on the northeast corner of lot 284. Leaving the dam, the mill-pond curves slightly into land lot 285, for a distance of about two hundred and fifty feet; thence, returning into lot 284, it continues in a general southerly direction through lots 284 and 317 to a point near the southern boundary line of land lot 317, where the ponding of the water ceases. The length of the mill-pond on Mrs. Loeb's own land is about three hundred yards. Adjoining Mrs. Loeb's land on the south is a tract of about six acres belonging to the defendant, on which it has constructed its main power-plant for the generation by steam engines of the electrical current for the street railway system and the electric lighting of the City of Rome. The western boundary of this tract is a line flowing through the center of the mill-pond, which at this point is about thirty feet wide and six feet deep. The titles to the land of the contesting parties are derived from a common source, Joseph J. Cohen. The mill in question was built, about the year 1842, on a tract of land containing 16.3 acres in the northeast corner of land lot 284, by Jonas King. There are a number of conveyances of this property, finally terminating in a grant of this mill property in 1862 to Joseph J. Cohen, in which occurs the following language: "Also conveying the mill privileges up the creek, allowing the raising of the dam one foot higher in accordance with the same expressed and limited upon the assignment of the widow's dower, according to the deed from Benjamin

F. Hawkins, administrator, and Jane A. King, administratrix of Jonas King, deceased, to John R. Freeman and D. B. Hamilton, the said parcel of land containing an area of sixteen and three tenths acres, more or less." Joseph J. Cohen died in 1878, leaving a widow and five children, three sons and two daughters, among whom he equally divided the remainder of his estate, after paying certain specific legacies. On application to divide the property in kind, commissioners were appointed, who made their return, which by proper order was made the judgment of the court. Under this report and judgment, the plaintiff in this case was assigned the mill property above described, and also a described portion of lot 285 in Floyd county. The bulk of the share given to the plaintiff was of the value of $11,958.03, and $10,000 of this amount consisted of the mill property in question, and the appurtenant "mill privilege up and down the creek as far as the lands of the J. J. Cohen (estate) extends." Of the share of $11,959.03 assigned to the other daughter of testator, Sarah Ella Cohen, $10,000 consisted of the 277 acres of land lots 284 and 317 which J. J. Cohen had acquired in 1869. In 1893 Sarah E. Cohen, then Sarah E. Schlesinger, conveyed to Lyttleton Lytle and others all the land in lots 284 and 317 allotted to her in the division of her father's estate; and from these grantees the defendant in 1906, through mesne conveyances, acquired title to "six acres more or less" of the above-described lands. This tract adjoins the 16.3 acres comprising the mill property on the south, and fronts on the mill-pond which at this point is of an average width of about 45 feet and an average depth of about 6 feet. The defendant is a corporation under the laws of Georgia, and is engaged in operating an electric street-car system and furnishing electric lights to the City of Rome and the public. Its main power-plant is located on the six-acre tract above described. Its steam turbines, or condensing engines, require a continuous daily circulation through them of about 400,000 gallons of cool water, which the defendant takes from and returns to Silver creek mill-pond. This water is drawn out of the mill-pond, passed through the condensing cylinders of the turbines, and allowed to flow back into the pond at a point on the defendant's property a short distance below the point of intake. The use of this quantity of cool water is a necessary factor and essential to the operation of the condensing engines. If the defendant con-

tinues to use the condensing engines and does not make use of the water of Silver creek pond, it would necessitate the use of a "cooling tower," using city water, which would require an additional annual expenditure of about $3,000.

Demurrers to the petition were filed by the defendant. The judge rendered a decision overruling the demurrers, and finding in favor of the injunction prayed for "in the sixth paragraph of the amendment of the petition," which was that the defendant be enjoined from maintaining or using the reservoir in the manner described, or any other device or form, employing any method of using the waters of the mill-pond on Silver creek which permanently diverts the same or any portion thereof from the pond. To this judgment the defendant excepted.

*Dean & Dean* and *J. M. Hunt,* for plaintiff in error.

*Henry A. Alexander,* contra.

HILL, J. (After stating the foregoing facts.) The court held, in effect, that the defendant had no riparian rights in the water of the mill-pond. Both the plaintiff and the defendant claim title to their respective tracts of land from a common source. The plaintiff claims title to 16.3 acres of land, upon which is situated a mill-pond, with the privilege contained in the grant of backing water as far as a dam thirteen feet in height would back it, and also the grant of "mill privileges." At the time of filing the suit the mill was not in operation, the mill-house having been burned; but the dam and pond were maintained at the usual height, which covered a portion of the land owned by the defendant. The defendant owned a tract of six acres of land adjoining the mill-pond, the western boundary of which extended to the middle of the stream, the pond at this point being of an average width of forty-five feet, and of a depth of six feet. The defendant was engaged in operating a plant for generating power and electric current; and in order to do so it was necessary to use a certain quantity of cool water—about 400,000 gallons daily—in the operation of its condensing engines. This water the defendant takes from the mill-pond and returns substantially the same quantity thereto by means of pipes. It insists that it has the title to the land to the center of the stream, and the right to the use of the water as it flows along the natural channel of the stream, for domestic, agricultural, and mechanical purposes, by reason of being

a riparian owner; and that in using the water there is no material injury to the rights of other proprietors. The plaintiff, on the other hand, contends that she has the exclusive right to all the water in the pond for "mill privileges," without any diminution whatever, and that this excludes all other riparian rights of every character. The controlling question in the case, therefore, is whether the defendant has riparian rights in the use of the water in the mill-pond in question.

The general rule is that riparian owners are each entitled to the center of the stream. Civil Code (1910), § 3630. But it is insisted that the plaintiff, by the division of the property in kind and the order of the court, had the right to "mill privileges," and that this included all the water in the pond. But we can not agree to that proposition without qualification. The general rule as to the rights of riparian proprietors is that each may use the water for any purpose to which it can be beneficially applied without material injury to the rights of others. Gould on Waters (3d ed.), § 204. Every riparian owner may make a reasonable use of the stream passing by his land. *Ib.* § 208. Prior to the building of the mill and pond and the grant of the "mill privileges" to the predecessors in title of the plaintiff, the riparian owners would undoubtedly each have the right to the use of the water to the middle of the stream, provided the use was reasonable and did not injure other riparian proprietors; and though she subsequently became the owner in fee, yet in the partition of the property the "mill privileges" were carried forward. We do not understand that the term "mill privileges," as contained in the order of the court, gives the plaintiff the exclusive use of all the water in the pond, whether needed or not for mill purposes, to the exclusion of a reasonable use by other riparian proprietors. The grantee of a mill privilege, without special mention of water rights, takes a right to the actual flow of the stream, subject to its reasonable use by upper riparian owners. Whitney *v.* Wheeler Cotton Mills, 151 Mass. 396 (24 N. E. 774, 7 L. R. A. 613). As to what constitutes a "mill privilege," see 5 Words & Phrases, 4505.

It will be observed that the grant of the mill property and of mill privileges was to Joseph J. Cohen, the predecessor in title of the plaintiff, and that no express grant was ever made to the plaintiff; but whatever right she has is by virtue of the setting

apart of the mill property in question to her guardian for her, under and by virtue of the proceedings to divide the property of the estate of Joseph J. Cohen in kind, and the order of the court based thereon. The effect of the proceedings to divide the property in kind was to vest in the plaintiff the title to the mill property described in the division, as set aside to her, and also to the "appurtenant mill privileges," with the use of so much of the water in the mill-pond as is necessary for the operation of the mill in a reasonable manner. See Gould v. Boston Duck Co., 13 Gray, 442. But we do not understand the law to be that the owner of the mill property, with mill privileges, can deprive riparian owners contiguous to the stream of a reasonable use of the water, where it does not interfere with the operation of the mill in a reasonable manner. It is to be observed that the plaintiff does not own the title to the land under the pond at the point where the defendant takes its water, but the title is in the defendant to the center of the original stream. Under these circumstances, we think the defendant is entitled to a reasonable use of the water in the mill-pond adjacent to its property, provided it does not materially interfere with the mill privileges of the plaintiff or other riparian proprietors. There is no contention that it does so materially interfere; but the plaintiff insists that the adjacent proprietor (the defendant) is not entitled to use *any* water therefrom. We do not think the fact that at the point of intake of the water by the defendant the water is not from a running stream, but is from the pond, makes any difference, under the facts of this case. A riparian owner is one having land bounded on a stream of water, as such owner having a qualified property in the soil to the thread of the stream. Bardwell v. Ames, 22 Pick. 355. Riparian rights are such as grow out of the ownership of the banks of streams, and not out of the ownership of the bed of the stream. The word "riparian" has reference to the bank, and not to the bed of the stream. For a general discussion of what constitutes riparian rights, see note to Mobile Dry Dock Co. v. City of Mobile, 9 Ann. Cases, 1229, and *Price* v. *High Shoals Mfg. Co.*, 132 *Ga.* 246 (64 S. E. 87, 22 L. R. A. (N. S.) 684). As to the grants of water-powers, see note to Merrified v. Canal Commissioner, 67 L. R. A. 369.

In the instant case the defendant claims under a grant conveying the land upon which its power-plant is situated, to the center of

the stream; and it is alleged that its upland, upon which its plant is situated, is in actual contact with the mill-pond out of which it takes the water to supply the plant. From the authorities cited, and a review of the whole case, we conclude that the defendant has riparian rights in the mill-pond, so as to entitle it to a reasonable use of the water without material injury to the mill privileges of the plaintiff. Having shown that the defendant, as a riparian owner, has the right to make a reasonable use of the stream and a reasonable use of the water from the pond adjacent to its property, provided that it does not thereby materially interfere with the mill privileges of the plaintiff or other riparian proprietors, and it not appearing from the petition that, considering the character of the use to which the water was put by the defendant or the quantity of water consumed thereby, there was an unreasonable use of the water, or that the owner of the mill privileges was materially injured in consequence of this use or the consumption of the small amount of water, it follows that the plaintiff was not entitled to the injunctive relief applied for. Consequently the court erred in overruling the general demurrer to the petition, and in enjoining the defendant from maintaining its reservoir, and from using the waters of the mill-pond in accordance with the principles announced in this opinion.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*

ATKINSON, J., concurs in the judgment, but not in all that is said in the opinion.