## THOMPSON *v.* TENNYSON.

1. The owner of land adjoining a non-navigable stream is the owner of the soil to the center of the thread of the stream, and of the fishing rights to the center of the thread on his side of the stream. If one proprietor owns the land on both sides of the stream, he has the exclusive right of fishing therein.

(a) The right of fishing is not severed from the ownership of the fee by grant which does not by its terms either expressly convey the right, or necessarily include it, as, for instance, an unrestricted grant of all water rights or privileges.

(b) The grant by the owner of the fee of "mill privileges" carries the right to the reasonable use of land and water necessary to the operation of a mill, but does not grant any fishing privileges.

No. 998. FEBRUARY 12, 1919.

Injunction. Before Judge Thomas. Thomas superior court. May 4, 1918.

Mrs. S. F. Tennyson brought her petition against J. T. Thompson, alleging, that she was the owner of a grist mill which her husband J. N. Tennyson, as her agent, conducted for her; that in the operation of the mill for the purpose of grinding corn she had acquired by deed the privilege of maintaining a mill-pond on

certain land described in the deed; that she was in the possession of the same, operating the mill and using the pond through her husband and agent, and her predecessors in title had been in the peaceful possession of the same without interference for thirty years or more; that the defendant and his agents patrolled the pond and forbade those working in plaintiff's employment, and her licensees, from using or going on the pond, and had put up signs forbidding any one from going on the pond; that defendant ordered plaintiff's husband off the pond and made threats intimating that he would shoot any one caught on the pond; that defendant interfered with persons who desired to visit the mill and premises for the purpose of having their corn ground, and he still continues to patrol the pond and premises, interfering with plaintiff's business; that defendant has been notified to stay off the premises and pond, but he wilfully and maliciously disregards and violates her rights of private property.   Plaintiff prayed that defendant and his agents be enjoined from going on the pond and premises, and from intimidating the customers of plaintiff, etc.   The part of plaintiff's deed material here is as follows:   Plaintiff attached to her petition a deed from Mrs. Siddah Perry, of Thomas County, Georgia, dated October 3d, 1917, conveying "the privilege of having and maintaining a mill-pond known as the Bullock mill-pond, situated on lot number 207 in the 17th land district of said State and county. Also that portion of lot of land number 208, containing 107 acres, more or less, and bounded as follows: on the east by original land lot line, on the south by the run of a certain branch, on the west by lands of Mrs. Freeman Carden, and on the north by lands of Mrs. Freeman Carden, being the same land upon which my residence is located, and which is and has been used in connection with the operation of the mill above described.   Also, that portion of lot No. 194 in said district of said State and county as is and has been used for the purpose of backing water thereon in the use, maintenance, and operation of said mill."

The defendant filed an answer, denying the material allegations of the petition, and averring that he held the land on which the pond is located under a warranty deed from T. T. Thompson to himself.   He also attached a copy of a deed from James A. Bullock to T. T. Thompson, by which the grantor of the defendant acquired title and possession of lot No. 207.   Defendant averred,

that "the plaintiff has no interest or equity in or respecting lot of land No. 207, save the mill privileges defined in. the deeds hereto attached;" that the defendant was the owner of that part of lot of land No. 207 covered by and adjacent to the mill-pond, and is entitled to the hunting and fishing privileges thereon, whereas the plaintiff's agent and husband "has, without authority of law, endeavored to seize and hold the exclusive hunting and fishing privileges on and adjacent to said pond, which hunting and fishing privileges are entirely separate and distinct from the mill and the mill privileges." The defendant prayed that the plaintiff's prayers for relief be denied, and that she be enjoined from hunting or fishing upon the pond, or that part of lot of land No. 207 adjacent to the pond, without first obtaining the written permission of the defendant or his assigns. He also prayed that the deed from Mrs. Perry to the plaintiff be canceled as a cloud upon his title.

Upon the interlocutory hearing the trial judge granted the injunction as prayed for by the plaintiff, "in so far as the water and pond are concerned," and the defendant and his agents were enjoined from going upon the pond or premises described in the petition. To this judgment the defendant excepted.

*Clifford E. Hay,* for plaintiff in error.

*Titus, Dekle & Hopkins,* contra.

HILL, J. From the averments of the petition and answer it will be seen that the main question at issue between the parties is, who is entitled to the exclusive hunting and fishing privileges in the mill-pond referred to in the petition? It appears that the fee of lot No. 207 was conveyed by James A. Bullock on December 4, 1874, to Tandey Thompson (T. T. Thompson), together with all of the privileges except mill privileges; and on February 20th, 1908, T. T. Thompson conveyed to J. T. Thompson, the defendant, lot No. 207 of the 17th district, it being recited: "this deed subject to water-mill privileges." At the time of the conveyance by Bullock to T. T. Thompson there was a creek on the property, but no mill or mill-pond had been constructed. Thereafter the grantor built a mill and maintained a mill-pond for a number of years. On August 17, 1908, James A. Bullock conveyed to Mrs. Siddah Perry "the privilege of having and maintaining a mill-pond" on lot 207; and on October 3, 1917, Mrs. Perry conveyed to Mrs.

Tennyson, the plaintiff, "the privilege of having and maintaining a mill-pond, known as the Bullock mill-pond, situated on lot 207."

We will first deal with the question of who possesses the exclusive right of fishing so far as the right is dependent upon the conveyances of the respective parties. Under the common law the owner of land bordering on a non-navigable stream owned the soil to the center or thread of the stream, and likewise had the exclusive right of fishing on his side of the stream. If the same person owned the land on both sides of the stream, he was entitled to the exclusive right of fishing. Carter *v.* Murcot, 4 Burr. 2162; 12 Eng. Rul. Cas. 166. And the doctrine of the common law has been adhered to by the courts of this country. Beckman *v.* Kreamer, 43 Ill. 447 (92 Am. D. 146); Hooker *v.* Cummings, 20 Johns. (N. Y.) 43 (11 Am. D. 249); Commonwealth *v.* Chapin, 22 Mass. 199 (16 Am. D. 386); Beach *v.* Morgan, 67 N. H. 529 (41 Atl. 349, 68 Am. St. R. 692); Griffith *v.* Holman, 23 Wash. 347 (63 Pac. 239, 54 L. R. A. 178, 83 Am. St. R. 821).

This is also the law as decided in Georgia. In the case of *Joiner* v. *Wilkes,* 148 *Ga.* 300 (96 S. E. 385), it was held that "Under the pleadings and the evidence the court did not err in granting the interlocutory injunction." There is no statement of facts and no opinion in the report of that case. Reference to the record, however, discloses that the case there decided was submitted to the judge for decision upon an agreed statement of facts, from which it appears that the plaintiff, Wilkes, whose right to an injunction was maintained by the decision rendered, was the owner in fee of lot of land No. 57, adjoining one side of a mill-pond, his title coming through a chain of conveyances from one Tharp Spence. Joiner, the defendant, through a chain of conveyances from the same common grantor, had been granted "all the water and mill privileges on lot of land No. 57 in the 17th district of Thomas County, Georgia, together with their every right and privilege desired, wanted, or required for the purpose of erecting, building, and operating a water-mill and gin and such other machinery as may at any time be added or operated by water-power." Under this grant the defendant claimed to be entitled to the exclusive fishing privileges in the mill-pond, notwithstanding the plaintiff's ownership of the soil adjoining a portion of the pond. The effect of that decision, therefore, was to hold that

the owner in fee of land on one side of a pond was entitled to fish in that portion of the pond which extended over the soil owned by him; and further, to rule that a previous grant by the common grantor of all the water and mill privileges on lot of land No. 57 did not have the effect of conveying to the grantee an exclusive right of fishing in the pond. In the case of *Lee* v. *Mallard*, 116 *Ga.* 18 (42 S. E. 372), it was held: "The owner of water in a stream or pond not navigable, or of all the privileges therein, has the exclusive right of fishing in the same, though the land lying under the water may belong to another. Accordingly a conveyance of land lying upon the natural bank of an unnavigable stream, upon which is located a mill standing on other land of the grantor and across which is a dam, causing a pond a portion of which covers a part of the land conveyed, does not pass to the grantee any right to fish in such pond at any point below the then existing high-water mark thereof, when by the terms of the conveyance an exception is made in the grantor's favor as to 'all water privileges up to high-water mark, and all other privileges in going to his mill.' " The decision just quoted, on first consideration, might seem to conflict with the ruling in the *Joiner* case, supra, but it will be noted that in the *Lee* case the exception in the grantor's favor was of "all water privileges up to high-water mark," without any language which would qualify or restrict the water privileges granted; whereas in the *Joiner* case the language was so coupled with the right and privilege of erecting, building, and operating a water-mill and gin as to make the deed capable of the construction that the words, "all water and mill privileges on lot of land No. 57," meant all such water and mill privileges as were reasonably necessary for the purpose of erecting, building, and operating the water-mill or gin referred to; and with this construction placed upon the deed there is no real conflict between the decisions in these two cases.

In the case now under review the only exception which the common grantor made in conveying the fee of the land was to reserve to himself the mill privilege. In the case of *Gould* v. *Boston Duck Co.*, 79 Mass. (13 Gray) 442, 452, it was said that the term "mill privilege" in a conveyance of land embraces the right which the law gives the owner to erect a mill thereon, and to hold up or let out the water, at the will of the occupant, for the

45

purpose of operating the same in a reasonable or beneficial manner. In Moore *v.* Fletcher, 16 Me. 63, 65 (33 Am. D. 633), the term "mill privilege" was defined as meaning the land and water used with the mill, and on which it and its appendages stand. In a decision of this court, *Rome Railway & Light Co. v. Loeb,* 141 *Ga.* 202 (80 S. E. 785, Ann. Cas. 1915C, 1023), it was said: "The general rule is that riparian owners are each entitled to the center of the stream. Civil Code (1910), § 3630. But it is insisted that the plaintiff, by the division of the property in kind and the order of the court, had the right to 'mill privileges,' and that this included all the water in the pond. But we can not agree to that proposition without qualification. The general rule as to the rights of riparian proprietors is that each may use the water for any purpose to which it can be beneficially applied without material injury to the rights of others. Gould on Waters (3d ed.), § 204. Every riparian owner may make a reasonable use of the stream passing by his land. Ib. § 208. Prior to the building of the mill and pond and the grant of the 'mill privileges' to the predecessors in title of the plaintiff, the riparian owners would undoubtedly each have the right to the use of the water to the middle of the stream, provided the use was reasonable and did not injure other riparian proprietors; and though she subsequently became the owner in fee, yet in the partition of the property the 'mill privileges' were carried forward. We do not understand that the term 'mill privileges,' as contained in the order of the court, gives the plaintiff the exclusive use of all the water in the pond, whether needed or not for mill purposes, to the exclusion of a reasonable use by other riparian proprietors. The grantee of a mill privilege, without special mention of water rights, takes a right to the actual flow of the stream, subject to its reasonable use by upper riparian owners. Whitney *v.* Wheeler Cotton Mills, 151 Mass. 396 (24 N. E. 774, 7 L. R. A. 613). . . The effect of the proceedings to divide the property in kind was to vest in the plaintiff the title to the mill property described in the division, as set aside to her, and also to the 'appurtenant mill privileges,' with the use of so much of the water in the mill-pond as is necessary for the operation of the mill in a reasonable manner. See Gould *v.* Boston Duck Co., 13 Gray, 442. But we do not understand the law to be that the owner of the mill property, with mill privileges, can de-

prive riparian owners contiguous to the stream of a reasonable use of the water, where it does not interfere with the operation of the mill in a·reasonable manner. It is to be observed that the plaintiff does not own the title to the land under the pond at the point where the defendant takes its water, but the title is in the defendant to the·center of the original stream. Under these circumstances, we think the defendant is entitled to a reasonable use of the water in the mill-pond adjacent to its property, provided it does not materially interfere with the mill privileges of the plaintiff or other riparian proprietors."

In view of the authorities above cited, we conclude that so far as the respective grants are concerned the effect of the conveyance by James Bullock to T. T. Thompson in 1874 was to pass to the latter the fee, which would include the hunting and fishing privileges, in the absence of language expressing a contrary intent, and that· the language "with all the privileges except for mill privileges" had only the effect to reserve in the grantor such privileges, water or otherwise, as were reasonably necessary for the operation of the mill, and did not reserve to him any hunting· or fishing rights, and that under the subsequent conveyance J. T. Thompson is now the owner of the fee, including the fishing and hunting rights, and that Mrs. S. F. Tennyson has only the mill privileges, as above defined.

The case of *Mallet* v. *McCord,* 127 *Ga.* 761 (56 S. E. 1015), seems to have been decided solely with respect to the rights conferred by a reservation of the grantors of "the right to fish in said pond," this reservation occurring in a conveyance wherein they had conveyed to the grantees the right to "keep and maintain a dam on Yellow River Creek in said county," and to keep .the water at its present height.

The defendant in error contends, however, that, irrespective of the rights of the parties under the deeds under which they hold, she now has by prescription acquired the exclusive right·of fishing in the mill-pond. If it be conceded that an exclusive right of fishing in private waters can be acquired by prescription, since no such right is purported to be given by the deeds·under which the defendant in error claims, it would require twenty years possession to ripen a title by prescription, ·and to do this she seeks to tack on the possession and use of the hunting and fishing privileges by

James A. Bullock, the common grantor, who we have seen had conveyed these privileges by his deed to T. T. Thompson in 1874. Manifestly any attempt to establish prescription in his behalf would have failed, because his possession could not be in good faith, as it would be an attempt to prescribe against his own title which he had conveyed to another, which certainly could not be done without proof that he had ousted his grantee.

In addition to seeking to restrain the defendant from patrolling and going on the pond, it was also alleged in the petition that the defendant interfered with the customers of the mill and forbade them from using the pond and mill, and it was sought to enjoin him from intimidating the customers of the plaintiff and from interfering with her agent in the conduct of the mill business, etc. The only support of this allegation found in the evidence is contained in the affidavit of J. M. Tennyson, in the statement "that the defendant, Jim Thompson, does not only attempt to order and keep people off so much of the pond as is located on lot 207, but that he attempts to keep people off of the pond and mill premises entirely."

In so far as the order of injunction restrains the defendant from going upon the pond or premises described, it is reversed; and the court is directed to modify it so as to restrain the defendant only from interfering with the plaintiff's business and customers on the mill premises themselves.

· *Judgment reversed, with direction. All the Justices concur.*