42108, 42117. STATE HIGHWAY DEPARTMENT v. NOBLE et al.; and vice versa.

ARGUED JUNE 10, 1966—DECIDED JUNE 28, 1966.

*Arthur K. Bolton, Attorney General, Richard L. Chambers, E. J. Summerour, Assistant Attorneys General, S. B. McCall, Virgil Griffis, Asa D. Kelley, Jr., Deputy Assistant Attorneys General,* for appellant.

*Hugh G. Wright, Edward Parrish,* for appellees.

EBERHARDT, Judge. ■ Enumerated as error by the condemnor on its appeal are refusals of the court to admit as evidence of comparable sales the sales of (a) a five-acre tract adjoining the lands of the condemnee and having the same type of soil and soil conditions as did the land of the condemnee, made twenty-three months after the date of taking, (b) a 32.7 acre tract immediately adjoining the land of the condemnee having similar soil and conditions, made some six years after the date of taking, and (c) a tract located approximately six miles from the land of the condemnee, but having similar soil and soil conditions, including a similar pond, made within a year of the date

of taking. Each of the tracts had some pasture land, some culti-vatable land and some swampy area. The evidence was objected to and excluded because the sales occurred after the date of tak-ing. It was contended that these could not, therefore, amount to evidence of the value of comparable lands as of the time of taking, and that the sole issue was as to the value of the con-demnee's land on the date of taking. The condemnee and his witnesses testified that land values in the county and in the general area of the improvement being made by the condemnor had been on a steady increase since the time of taking. Conse-quently, if this evidence tended to show a higher value than the market value on the date of taking, it was against the condemnor who offered the evidence and in favor of the condemnee.

While it is within the sound discretion of the trial judge to determine whether the sale is comparable and throws light on the value of the land being condemned, the discretion is a legal one. If it appears that the property which was the subject matter of the sale was in no way comparable to that being con-demned, the evidence should not be admitted. But if it does have similarity, exclusion of the evidence is error. The sale should be within a reasonable proximity of time to the date of taking, either before or after. It is generally difficult to find evidence of sale made at the time of taking—frequently impossi-ble. If it should appear that drastic changes in the economy have occurred and land values have changed so that the price paid for similar land in open market could not fairly be said to reflect the value of the land being condemned, it should be excluded. "It is to be considered with reference to throwing light on the issue, and not as a mere method of raising a legal puzzle." *Flemister v. Central Ga. Power Co.*, 140 Ga. 511, 515 (6) (79 SE 148). Cf. *Freedman v. Housing Authority of City of Atlanta*, 108 Ga. App. 418, 421 (5) (136 SE2d 544); *Fulton County v. Elliott*, 109 Ga. App. 775 (137 SE2d 477), reversed on other grounds in *Elliott v. Fulton County*, 220 Ga. 377 (139 SE2d 312); *Schrimsher v. State Hwy. Dept.*, 110 Ga. App. 705, 707 (1) (140 SE2d 64). But where, as here, the difference in values appears to favor the party against whom the evidence is offered, there is no basis for excluding it. Exclusion of the evidence of these sales

was error. *State Hwy. Dept. v. Rutland,* 112 Ga. App. 792 (146 SE2d 544). A different conclusion is not required by *State Hwy. Dept. v. Futch,* 109 Ga. App. 741 (137 SE2d 350), which dealt with evidence of changes in the subject matter of the condemnation after the date of taking.

■ Condemnor enumerates as errors the admission of testimony, over proper objection, that (a) the condemnee's property might possibly have a special or unique value to him because of the presence thereon of a pond from which fish were caught and sold through his retail meat and fish market, or because the pond made water available to cattle which condemnee grew on his pasturage and butchered for sale through the market, and (b) that the condemnee had a stated gross annual income from the operation of the meat and fish market during the year in which the land was condemned, this evidence having been offered to show the claimed special or unique value.

As we view it, this evidence does not show a special or unique value, and its admission for that purpose was error. If the catching and selling of fish from the pond or butchering cattle from the pasture and selling them through his market (not located on the land) afforded the condemnee's land a special or unique value, then it must follow that the growing of corn, peas, beans, tomatoes, and the like and selling these through a grocery would do the same; consequently, we would reach the conclusion that any land from which an item can be taken and sold in the market, such as cotton, peanuts, corn, hay, timber, etc., would have a special or unique value to the owner. This we do not see and can not hold. That the land produces items which may be sold in the market may be shown as affecting its market value. The presence or absence of water on the land may be shown in like manner. The extent of the land's productive capacity and the amount and nature of available water is relevant. If these are removed or lessened by the improvements made, that is relevant in showing consequential damage to the property remaining.

An estimated gross annual income from the operation of a meat and fish market through which a portion of the sales were made from fish caught in the pond and from meat obtained in the butchering of cattle grown on the land is not evidence of

either the market value or of any special or unique value of the land to the owner. This evidence is irrelevant and of a grossly speculative nature. *Selma, Rome &c. R. Co. v. Keith,* 53 Ga. 178, 180; *State Hwy. Dept. v. Wilkes,* 106 Ga. App. 634, 638 (127 SE2d 715).

Since we hold that no special or unique value was shown by the evidence in this record, it must follow that a charge on that matter was unauthorized.

■ The grant of an easement to the condemnee for backing waters upon the land of an adjoining owner in connection with the construction of a dam was introduced in evidence. It provided that the condemnee should have the right to "build a dam across the run of said branch, and around the same, and to back water on and over the above described lands" of the grantor, an adjoining owner, but that the grantor "does hereby reserve unto herself, her heirs, assigns and personal representatives the right and privilege to use the lake or pond and its water for the purpose of fishing therein and watering livestock therefrom, provided however, that the party of the second part shall have the sole use of said waters for irrigation purposes." The court charged that this conveyance granted to the condemnee fishing rights over the lands of the grantor flooded by the construction of the dam, unless expressly excepted therein.

Condemnor enumerates this charge as error, asserting that the grant of the easement merely conveyed the right to back water over the grantor's land for *irrigation purposes,* that it conveyed no general water rights, and that by its terms the fishing rights were expressly reserved to the grantor.

The branch to be dammed was a boundary between the grantor of the easement and the condemnee, and each owned to the live thalweg, or center thread of the stream. The pond which resulted from the damming of the branch rested partly upon the land of the condemnee and partly upon the land of the grantor. Does ownership of a portion of the bed of the pond entitle condemnee to fishing rights over the entire pond? "There are two views on the question. The majority view, that of the common law, is that the owner of the bed has the exclusive right to the use of the waters above and may exclude the other bed owners

and fence off his portion . . . [Citations]. The minority view follows the civil law rule that each owner of the bed has an easement to use the entire portion of the lake or pond for recreational purposes, subject only to the limitation that it does not unreasonably interfere with the owner of the bed . . . [Citations.]" Baker v. Normanoch Assn., Inc., 25 N. J. 407 (136 A2d 645, 651-652). "In cases where various parts of the soil under a private lake are owned by different persons, and in which it does not appear that ownership was based on riparian rights, it has generally been held that each owner has exclusive rights to the use of the surface of the water over his own land, or at least that the owner of a larger portion can exclude from it the owner of a small portion." Annot., "Rights of Fishing, Boating, Bathing or the Like in Inland Lakes," 57 ALR2d 569, 592 (1958). We hold that condemnee, solely by virtue of ownership of a portion of the bed of the pond, had no fishing rights in that portion of the pond covering lands of the grantor of the easement.

Did the instrument granting the easement convey such rights? "The right of fishing is not severed from the ownership of the fee by grant which does not by its terms either expressly convey the right, or necessarily include it, as, for instance, an unrestricted grant of all water rights or privileges." *Thompson v. Tennyson,* 148 Ga. 701 (1a) (98 SE 353). The grant of the easement to Mr. Noble, the condemnee, was for irrigation purposes. He acquired no fishing rights under it (cf. *Thompson v. Tennyson,* 148 Ga. 701, supra) for "there remains in the grantor the right of full dominion and use of the land, except so far as a limitation thereof is essential to the reasonable enjoyment of the easement granted. . . . Such rights remain with . . . [the grantor] because they are not granted." *Georgia Power Co. v. Leonard,* 187 Ga. 608, 611 (1 SE2d 579).

Gager v. Carlson, 146 Conn. 288 (150 A2d 302), a case factually similar to the case sub judice, is not authority to the contrary. The court found in that case that the language of the particular easement involved was broad enough to permit any use of the water of a pond which was reasonably connected with the reasonable use of the land to which the easement was appurtenant, including use of water for boating, swimming and

fishing. Moreover, in the instrument involved there, language indicating a limited purpose to be served by the easement had been crossed out, and the easement conveyed was in general terms and unlimited as to time or purpose.

The charge was error.

■ Since the case is being reversed and there must be another trial, it is unnecessary to rule upon the cross appellant's contention that the court erred in refusing a continuance when a witness duly served with a subpoena did not respond.

*Judgment reversed in the main appeal. Cross appeal dismissed. Bell, P. J., and Jordan, J., concur.*