44039. STATE HIGHWAY DEPARTMENT v. HOWARD et al.

ARGUED NOVEMBER 7, 1968—DECIDED MARCH 5, 1969.

*Arthur K. Bolton, Attorney General, Richard L. Chambers,* *Robert E. Sherrell, Assistant Attorneys General, Wm. Malcolm* *Towson,* for appellant.

*Beverly B. Hayes,* for appellees.

EBERHARDT, Judge. ■ While it was held in *City of Gainesville v. Loggins,* 224 Ga. 114 (160 SE2d 374) that it was a prerequisite to an appeal from a judgment on the verdict of a jury in a condemnation proceeding by the city to pay to the condemnee or into the registry of the court the difference between

the award of the special master (the proceeding being under *Code Ann. Ch.* 36-6A) and the jury verdict, we do not regard that ruling as applicable to the situation here.

Art. I, Sec. III, Par. I of the Constitution (*Code Ann.* § 2-301) was amended in 1960, the amendment having been ratified by the voters in the election of November 8, 1960, so that it now provides, inter alia, that "when private property is taken or damaged for public road and street purposes by the State and the counties and the municipalities of the State, just and adequate compensation therefor need not be paid until the same has been *finally* fixed and determined as provided by law." (Emphasis supplied.)

This provision was not made applicable to the condemnation of lands for other public purposes, such as urban renewal, which was the purpose of the condemnation proceeding in *City of Gainesville v. Loggins,* 224 Ga. 114, supra. It applies only when the lands are being condemned for road and street purposes. There is no finality of the fixing and determining of the compensation in this sense until the judgment itself becomes final by a failure to appeal within the time provided by law, or upon a final disposition of an appeal from the judgment. In other situations, such as that in *City of Gainesville v. Loggins,* the provision is that the property shall not be taken "without just and adequate compensation being first paid." This applied to the acquisition of land for road and street purposes when *Woodside v. City of Atlanta,* 214 Ga. 75 (103 SE2d 108) was decided, and it was to escape the requirement of paying before the ultimate determination of just and adequate compensation for acquisition in highway construction that the constitutional amendment was proposed by the General Assembly and ratified by the people in 1960. *State Highway Dept. v. Smith,* 219 Ga. 800, 805 (1b) (136 SE2d 334).

The language of the constitutional amendment is plain and unambiguous. It was error to dismiss the motion for new trial.

■ For evidentiary purposes the condemnor produced an aerial map or photograph of the lands involved in this proceeding, bearing thereon a scale of measurement for the calculation of distances between points on the photograph. When the con-

demnor's witness was asked on cross examination to apply the scale to the photograph and tell the jury the distance necessary for obtaining a right of way across the lands of an adjoining owner in order to reach a public road (the condemnee's land being land-locked by the taking for road purposes), condemnor objected on the ground that the testimony would be hearsay, the witness having admitted that he did not know whether the scale was correct, or how it had been arrived at. The objection was overruled, and we think properly so. The condemnor, having produced the aerial map or photograph with the scale and having used it in interrogating its witness on direct examination, was in no position to challenge a calculation of distance made by the witness on cross examination, using the scale shown on the photograph. If the scale was not correct, the error should have been pointed out and the scale corrected. This the condemnor did not do.

■ There was evidence indicating that the remaining land of the condemnee might have value for use as residential property, and the condemnee tendered evidence that a livestock place at Cochran was located about 300 feet from a cafe, for showing that his land, located near his brother's abattoir, was suitable for residential use. It was objected to on the ground that there was no comparability between a residential use and the operation of a cafe. The trial court overruled the objection and allowed the evidence for the restricted purpose of showing suitability for residential use by comparability insofar as it might appear from the fact that eating meals is one of the things done in a residence. This was error. See *Sammons v. Webb,* 86 Ga. App. 382 (6) (71 SE2d 832) requiring similarity of conditions to appear in making a comparison. See also *Dunn v. Beck,* 144 Ga. 148 (86 SE 385). There was no evidence showing similarity as to size, type of operation, the volume of business, or the kind of equipment or procedures used in counteracting odors at the livestock place and the abattoir. Moreover, that people eat meals, both at home and at cafes, is too remote a similarity to make the two comparable in determining suitability of use for the purpose of ascertaining values.

■ Headnote 4 needs no elaboration. But see *Schrimsher v.*

*State Hwy. Dept.*, 110 Ga. App. 705 (1) (140 SE2d 64); *State Hwy. Dept. v. Noble*, 114 Ga. App. 3 (1) (150 SE2d 174).

■ The condemnee, testifying for himself, asserted that he had planned to use this land in connection with his old-age retirement and that he had in mind the possible development of a trailer court or the opening of a subdivision, and further testified, "Well, I had several things in mind, a variety of things— at the same time I hadn't planned anything definite, but I knew the potentials were good because Dublin was growing and I saw a lot of homes going up around in that vicinity and I knew that it would be a very profitable project to get into, but I hadn't made any decision other than just an idea that it could be used and I thought of those plans that could be carried out. For retirement plans." This testimony was objected to on the ground that it was speculative, and we agree that it was. It had no probative value in the showing of suitability for uses of the property other than those to which it was then devoted. "This Code section [36-505] clearly states that the suitability of land for other uses, and not the probability that other uses will be made of the land, is the criterion." *Moore v. State Hwy. Dept.*, 221 Ga. 392 (144 SE2d 747). "The uses which may be considered must be so reasonably probable as to have an effect on the present market value of the land; a purely imaginative or speculative value cannot be considered." 27 AmJur2d 72, Eminent Domain, § 280. Accord: *State Hwy. Dept. v. Thomas*, 106 Ga. App. 849, 850 (128 SE2d 520). This evidence should have been excluded.

■ While it is not necessary that an expert witness state the facts upon which he bases his opinion, (*Code* § 38-1710), it is error to refuse to permit him to do so for the purpose of showing the basis of the opinion. *Lewis v. State Hwy. Dept.*, 110 Ga. App. 845 (2) (140 SE2d 109); *State Hwy. Dept. v. Parker*, 114 Ga. App. 270 (150 SE2d 875); *Alabama Power Co. v. Chandler*, 217 Ga. 550 (2) (123 SE2d 767). It matters not whether the facts are sought from the witness while on direct or on cross examination. These may or may not be admissible as direct proof of value, depending upon their nature, but they are generally admissible for showing the basis of the expert's opinion as to value and for enabling the jury to evaluate its weight.

Where the facts are stated the opinion is entitled to greater weight. *Buckhanon v. State,* 151 Ga. 827, 833 (108 SE 209). Anything in *State Hwy. Dept. v. Wilkes,* 106 Ga. App. 634 (127 SE2d 715) conflicting with what is held in *Alabama Power Co. v. Chandler,* 217 Ga. 550, supra, must yield.

■ ■ It appeared from the evidence that the condemnee and his brother had operated a joint farming venture, using the lands of both, which were adjoining. From this the condemnor contended that no land-locking of condemnee's lands appeared, for he was already free to go over the brother's lands in getting to and from his own. This is a non sequitur. It did not appear that the condemnee had any right of way over his brother's land, though the brother may have permitted him to go over it. Thus it appeared uncontradictedly that the taking by the State Highway Department had the effect of closing all ingress and egress to the lands remaining from any public road. Suppose the brother should sell his land to another. Would the condemnee not be forced to acquire from the purchaser a right of way?

Consequently, requests to charge which assumed that the joint use of their lands in a farming venture would authorize a finding that there was no land-locking of condemnee's land were improper and a refusal to give them was not error.

The contention that the court was required to give the requested charges if they were pertinent, correct, and adjusted to the facts (which we do not find to be the case here) without change or variance is without merit. That requirement was voided by the Appellate Practice Act. See *Carnes v. State,* 115 Ga. App. 387, 393 (154 SE2d 781); *Holcomb v. Kirby,* 117 Ga. App. 266, 271 (160 SE2d 250).

■ The court instructed the jury fully on the procedure necessary for the condemnee to acquire a right of way to a public road over lands of an adjoining owner from his land-locked land, as appears in *Code Title* 83. It is true that in so doing he treated as a fact that the lands of condemnee were left land-locked by the taking for road purposes. Perhaps it would have been the better practice to leave that as a matter for resolution by the jury, as was stated in *Price v. State Hwy. Dept.,* 111

Ga. App. 255 (141 SE2d 215), but since this fact stood uncontradicted we can see no harmful error. Nor is the charge argumentative, as is urged by appellant. The charge was pertinent to the issue being tried and was appropriate in making a determination as to the amount of damages to be awarded for the lands not taken.

*Judgment reversed for the reasons stated in Divisions 1, 3, 5 and 6. Felton, C. J., and Whitman, J., concur.*