M. J. AND J. J. HUSSEY, administrators, plaintiffs in error, *vs.* JOHN NEAL *et al.*, defendants in error.

1. The defendants cannot by cross-bill claim damages from the complainant who resides in a different county, alleged to have been sustained by the wrongful suing out of the writ of injunction in said case. (R.)

2. Under the facts of this case there was equity in the cross-bill of the defendants, and the Court did not err in refusing to sustain the demurrer to the same. (R.)

Equity.    Damages.    Venue.    Before Judge KIDDOO. Mitchell Superior Court.    May Term, 1873.

On the 2d November, 1860, Cochran sold a plantation to Grier, giving bond for titles and taking two notes from Grier, each for $10,625 00, one due January 1, 1861, the other January 1, 1862.    Cochran owed Andrews about $3,500 00 unpaid purchase money for the land, and only had Andrews' bond for titles.    There were judgments for a considerable amount against Cochran when he sold to Grier.    In December, 1861, Cochran bought a plantation from Slaughter, and gave therefor the two notes on Grier, indorsing them, and took Slaughter's bond for titles.    Cochran also bought personal property to the amount of $2,400 00 from Slaughter, and gave his note for that amount.    Slaughter owed Culpepper (his vendor) two notes of $8,750 00 each, one due January 1, 1863, the other January 1, 1864, to secure which Slaughter had given Culpepper a mortgage on the land sold

Hussey *vs.* Neal *et al.*

to Cochran. In May, 1863, Slaughter died, and in November, the same year, Cochran died, the above mortgage note judgments being unpaid. Neal, a judgment creditor of Cochran, filed a creditor's bill against the administrator *de bonis non*, etc., of Cochran, making the administratrix of Slaughter a party and enjoining her from collecting only a certain portion of the notes on Grier. Also making Grier a party and enjoining him from paying the notes, and asking the appointment of a receiver. Various creditors of Cochran came in and were made parties. Grier also obtained an injunction restraining a suit instituted by Mrs. Slaughter on the notes against him.

At the November term, 1867, of Mitchell Superior Court, by consent of all parties, an interlocutory decree was taken, directing that receivers be appointed; that Mrs. Slaughter, (now Mrs. Hussey,) administratrix of Slaughter, deliver the notes on Grier to the receiver; that out of the proceeds of the notes the receiver pay the Andrews debt which was in judgment; that Grier should have clear titles to the Andrews' land; that Mrs. Slaughter be subrogated to all the rights of Andrews under his judgment in the final distribution of the assets of Cochran's estate. A decree was taken at the same time in favor of the receiver against Grier on his notes for about $30,000 00. The object of this arrangement was to obtain money to discharge the mortgage on the plantation bought by Cochran from Slaughter, so that it might be secured unencumbered to the estate of Cochran and his creditors.

· Grier having failed to pay the decree against him, and proving insolvent, it was, by consent of parties, agreed that another interlocutory decree should be taken at May term, 1869, whereby Grier was to surrender the Andrews' land to the receiver, together with certain rent notes for the plantation for 1868 for about $4,000 00, receive his own notes and be discharged.

In the meantime, the mortgage creditors of Slaughter had foreclosed the mortgage and sold the Culpepper-Slaughter plantation in December, 1868, for about $9,500 00, leaving

about $10,000 00 of the mortgage debt unpaid, and due by Slaughter's estate.

The receivers sold the Andrews land for about $10,000 00, and collected the rent, about $4,000 00. There was personal property to the amount of several thousand dollars, belonging to the Cochran estate, which was in the hands of the receivers.

Mrs. Slaughter having intermarried with J. J. Hussey, who joined her in the administration, they filed an answer to the bill of Neal in the nature of a cross-bill, denying the rights of the creditors to the funds in the hands of the receiver—setting up the claim of the Slaughter estate to the same—so far as it came from the Andrews' plantation, by virtue of the foregoing facts, and asking a decree therefor, and alleging that the estate had been damaged by the injunction against it to the amount of $30,000 00, and also for a decree against Neal, who resides in Fulton county, and those who had made themselves complainants with him, for the amount of such damages. Both the Slaughter and Cochran estates are insolvent. Neal filed a demurrer, that the Court had no jurisdiction to grant the relief prayed for as to him; and jointly with the other defendants, that there was no equity in the cross-bill. The Court sustained the demurrer so far only as the cross-bill relates to and prays damages against Neal, and overruled it as to the other ground. Both parties excepted, and a joint bill of exceptions is brought to this Court.

WRIGHT & WARREN; HINES & HOBBS, for plaintiffs in error.

1st. Did the Superior Court of Mitchell county have jurisdiction to hear the question of damages as against John Neal? Penn *vs.* Lord Balt., 1 Vesey; Code, secs. 3417, 3084, 3023; 39 Ga. R., 533; 27 *Ibid.*, 178; 44 *Ibid.*, 65; 35 *Ibid.*, 208; 23 *Ibid.*, 139.

2d. Is there any equity in the cross-bill of Slaughter's administrators? 35 Ga. R., 119; Kendall *vs.* Dow, 46 *Ibid.*, 607.

LYON & IRVIN; VASON & DAVIS, for defendants.

Hussey *vs.* Neal *et al.*

TRIPPE, Judge.

We know of no statute or practice in this State which allows a defendant in a bill for injunction, etc., to set up in his answer, by way of cross-bill, a claim for damages against the complainant for suing out the injunction. The statutes of some of the States expressly secure this right to the defendant, and in some of them it is provided that the Chancellor may, on a dissolution of the injunction, decree damages to the defendant. But we have no such provision in the Code, nor are we aware of any practice allowing it in this State. When this injunction was granted, it was under that section of the Code which gave the Judge power to grant such writs, " upon such terms as to the affidavit and giving bond and security, as the Judge may direct :" Revised Code, sec. 3150. Section 3045 is : " Generally, equity jurisprudence embraces the same matters of jurisdiction and modes of remedy in Georgia as was allowed and practiced in England :" See Bein *et al. vs.* Heath, 12 Howard, 168. We, consequently, affirm the judgment of the Court below in sustaining the demurrer to that portion of the answer filed as a cross-bill, which prays that damages may be decreed for suing out the injunction.

We also affirm the judgment in overruling the demurrer to the cross-bill, for want of equity. Cochran bought Slaughter's land in December, 1861, and went into possession. He, and his representative after his death, and the receiver, after this litigation commenced, were in possession of that plantation until December, 1868. The receiver also has received several thousand dollars from the rent of the Andrews-Grier plantation. By the first consent decree, the administratrix of Slaughter turned over to the receiver the notes she held on Grier, and judgment was at the same time taken in favor of the receiver on these notes for about $30,000 00. The purpose of this arrangement having failed, another interlocutory decree was taken by consent, whereby the Grier debt was canceled, and the Andrews land and some $4,000 00 for rent thereof for 1868, were surrendered by Grier to the receiver,

and the land sold by him.   My own mind is quite strongly impressed that the estate of Slaughter has an equity in this fund, so far as concerns the increase thereof caused by the rent.   It was by the giving up the notes held by the administratrix on Grier into the hands of the receiver that the whole fund was brought into Court.   And it would seem to be not altogether equitable that Cochran and his representative and the receiver should have the benefit of six years' use of the Slaughter plantation, five of the six years being after Cochran's death, and by presumption of law, that much for the benefit of creditors; and, also, the receiver to get $4,000 00 for the rent of the Andrews place, and then that the whole fund arising from all these sources, including the sale of the Andrews land, should be appropriated to Cochran's creditors, to the exclusion of Slaughter's estate.

Moreover, the claim of Cochran, or his representative, on Slaughter, for a breach of Slaughter's bond, would be the value of the land at the time of the breach.   What that value was, was not shown.   It is true the sale was in December, 1868, but that does not determine the question, especially as the claim of dower was on it.   We do not decide that this would furnish a measure of the equity of the claim of the Slaughter estate on this fund—that is, by allowing that much out of the fund to the creditors, and the balance to the administratrix.   We are not now prepared now so to hold, as the point was not argued.   Nor do we feel prepared or authorized, upon a simple demurrer for want of equity, to adjudicate, not only that there is equity in the cross-bill, but what is the exact measure of that equity.   We simply affirm the judgment overruling the demurrer on this point.

Judgment affirmed.