## JORDAN *v.* CALLAWAY & COMPANY.

1. Judgment against the sureties on a bond to dissolve an injunction and receivership can not be entered in the main case, as in appeal cases, by virtue of the Civil Code, § 3550, except where the bond is conditioned for the payment of the eventual condemnation-money. Where the bond is conditioned otherwise than for the eventual condemnation-money, and especially where the verdict fails to fix liability according to the terms of the bond, the remedy is by an independent action on the bond.
2. Where the court is without authority to enter up a judgment against a surety on a bond in the main case, the judgment is to be treated as void and not as merely erroneous.
3. A party against whom a void judgment exists may bring an equitable petition to have such judgment cancelled and set aside.

MAY 17, 1912.

Equitable petition. Before Judge Sheppard. Tattnall superior court. April 5, 1911.

*James K. Hines* and *E. C. Collins,* for plaintiff.

*W. T. Burkhalter* and *Way & Burkhalter,* for defendants.

EVANS, P. J. J. A. Callaway & Company filed a petition against W. W. Washington, alleging that the defendant and one Blount entered into a contract with them, wherein Callaway & Company were to furnish to Washington and Blount the necessary funds to pay for turpentine timber then bought and boxed on the lands of J. L. Cowart, F. M. Williams, and others, to the amount of $492.28, and to pay the necessary pay-rolls of Washington and Blount while chipping and otherwise working the timber for turpentine during that season; Washington and Blount agreeing to deliver to their turpentine still all the crude turpentine made by them that season, to be distilled by Callaway & Company at $6.50 per barrel, the spirits to be shipped by them to the Savannah market, the net proceeds from the spirits and rosin to be applied to the cost of distillation and advances of every kind made by Callaway & Company, and the balance, if any, turned over to Washington and Blount. By mutual consent Blount was discharged from the contract, and Washington assumed all his obligations. Washington was indebted to Callaway & Company under this contract $457.13, besides interest, as appeared by an attached bill of particulars. Washington agreed that all existing leases, and such as he might subsequently acquire, should be assigned to Callaway & Company as security for the money and advances made by them; and agreeably to this arrangement all leases were assigned to Callaway & Company, ex-

14

cept one from J. L. Cowart to 600 acres of land. Washington refused to transfer this lease or to pay to Callaway & Company the amounts advanced by them to pay for the lease, but, on the contrary, he was going forward gathering the gum from the trees for the purpose of using the same independently of his contract; and he was insolvent. They prayed, that Washington be enjoined from removing any of the crude gum from the trees covered by any of the turpentine leases mentioned, that a receiver be appointed to take charge of his turpentine business, and that they have judgment against him for the amount of their account. The court granted a temporary injunction and appointed a receiver; and afterwards dissolved the injunction and dismissed the receiver, upon the defendant, filing with the clerk of the superior court a bond, with good security, in the sum of $750, "conditioned to pay the plaintiffs the net proceeds of all turpentine products derived, between this date and the final determination of this cause, from the lands covered by the J. L. Cowart lease, as described in said original petition, provided the jury trying said case shall find that the plaintiffs are entitled to the same and in favor of the injunction." The defendant gave bond with G. L. Jordan as security, pursuant to this order. Subsequently the case came on to be tried, and the following verdict was rendered: "We, the jury, find for the plaintiffs to the amount of $392.09." Upon this verdict a judgment was entered against the defendant W. W. Washington, and against G. L. Jordan as security on the injunction bond. A fi. fa. issued and was levied upon the property of the surety, who filed a petition to declare the judgment null and void, on the grounds, that it was unauthorized by the verdict; that he did not contract to become liable to pay any judgment that might be rendered against Washington in the case, but only for such gum as they might recover from the Cowart lands, and such sums as he received from the receiver, in the event the jury trying the case should find the plaintiffs were entitled to the same and in favor of the injunction; and that there was no finding in the case that the plaintiffs were entitled to the gum or an injunction, but merely a general verdict that the plaintiffs were entitled to recover a stated sum on the account sued on. A demurrer to the petition was filed, on the grounds, that no cause of action was set out; that the surety had his day in court and could not afterward be heard; that the bond

bound him to pay the amount for which Callaway & Company obtained judgment against Washington; and that, under the statutes in such cases made and provided, judgment was properly entered up against him on the injunction bond, which judgment had not been excepted to. The court ·sustained the demurrer and dismissed the petition, and exception is taken to this judgment.

1. Prior to the act of 1893 (Civil Code, § 3550), it was necessary to bring an independent suit on all bonds given in an equitable proceeding. Since that enactment, when a bond has been made by the losing party in an equitable proceeding, conditioned to pay the eventual condemnation-money in that action, it shall not be necessary to bring suit on the bond, but judgment may be entered thereon in the main case as in appeal cases. This enactment is applicable only to cases where a bond has been given by the losing party, conditioned to pay the eventual condemnation-money in the action; and if the bond is otherwise conditioned, the obligee is remitted to an independent action for redress. *Offerman &c. R. Co.* v. *Waycross R. Co.,* 112 *Ga.* 610 (37 S. E. 871). The eventual condemnation-money secured by an injunction bond is the amount ultimately fixed and settled by the judgment or decree of the court in the case. *Lockwood* v. *Saffold,* 1 *Ga.* 72. The bond given in this case was not for the eventual condemnation-money; it was not a bond obligating the security for the amount to be recovered on the trial of the case. It was a bond conditioned to pay the plaintiffs the amount of the net proceeds derived from the turpentine privileges upon said tract of land between the date of the order and that of the final hearing, as well as the amount in the hands of the receiver directed by said order to be delivered to the defendant, in the event the jury trying the case should find the plaintiffs were entitled to the same and in favor of the injunction. It was executed pursuant to an order dissolving an injunction and dismissing the receiver, upon the execution of a bond in the sum of $750, "conditioned to pay the plaintiffs the net proceeds of all turpentine products derived, between this date and the final determination of this cause, from the lands covered by the J. L. Cowart lease, as described in said original petition, provided the jury trying said case shall find that the plaintiffs are entitled to the same and in favor of the injunction." The verdict of the jury was for "the plaintiffs to the amount of $392.09." Verdicts are

to be construed in connection with the pleadings in the case. The suit was to recover certain sums alleged to be due upon an attached bill of particulars, and the prayer for injunction and receiver was ancillary to this relief; the plaintiffs contending that by reason of the special facts of the case, and the insolvency of the defendant, they were entitled to have the crude turpentine produced from the premises leased from J. L. Cowart impounded for the purpose of appropriating so much thereof as might be necessary to the satisfaction of the judgment. It is clear from the general scope of the pleadings that the plaintiffs were not entitled to recover from the security on the bond any sum except that which was established in the trial as being the net proceeds derived from the turpentine privileges upon the Cowart tract of land. Even if in this particular proceeding a judgment could have been entered upon the bond, it was a prerequisite that there be a finding fixing the surety's liability according to the condition in his bond. The verdict was general, and did not cover this issue. A judgment can not be entered up on a verdict except as authorized by the verdict.

2. It is said that the remedy of the surety was by direct exception to the decree as entered. If the bond had been for the eventual condemnation-money, so as to have authorized judgment to have been entered against the surety, and the judgment as entered was merely erroneous, the remedy of the surety to avail himself of any error in the judgment would have been by direct exceptions to it. *Booth* v. *Mohr,* 125 *Ga.* 472 (54 S. E. 147). But, as we have already pointed out, the bond given in this case was not a bond for the eventual condemnation-money, which would authorize a judgment to be entered upon it in the main case as a result of the verdict, nor was there any verdict to support a judgment against the surety. The judgment against the surety is not merely erroneous; it is void.

3. In his equitable petition the security prays that the judgment entered against him be declared null and void. A party against whom a void judgment exists has a right to have it set aside and thus clear away any cloud that it may cast upon his right to alienate his property so long as it remains of record against him. *Crane* v. *Barry,* 47 *Ga.* 476. One of the jurisdictional grounds of equity is to cancel writings which cast a cloud over the complainant's title. *Judgment reversed. All the Justices concur.*