SPIVEY *v.* BARWICK.

RUSSELL, C. J. 1. The plaintiff introduced a large number of witnesses, and closed; two witnesses (not including the defendant himself) had testified in behalf of the defendant, but a number of witnesses for the defendant were present to testify, and the defendant had not closed his testimony in support of his answer, when the court of its own motion directed a verdict contrary and adverse to some of the contentions pleaded by the defendant. This was error. Even if the evidence already adduced up to the time that the verdict was directed demanded the finding, the direction of a verdict before the defendant had completed the introduction of his witnesses and closed was erroneous, because premature. The judgment is controlled by the ruling in *McWilliams* v. *Rome*, 138 *Ga.* 581 (2) (75 S. E. 645).

2. As a general rule, either party in every cause should be allowed full opportunity to introduce all evidence competent and relevant to support the case alleged by him. A party's right to introduce witnesses who are present in court should not be abridged, for the one reason, if no other, that such party has no better way of having the competency and relevancy of his testimony determined by the court than by presenting his witnesses and offering their testimony. "Whether, after he has been allowed a full opportunity to introduce all relevant evidence bearing on the issue, he will have made out a case, is a question which will then properly arise." *McWilliams* v. *Rome*, supra.

3. "The owner of land adjoining a non-navigable stream is the owner of the soil to the center of the thread of the stream, and of the fishing rights to the center of the thread on his side of the stream. If one proprietor owns the land on both sides of the stream, he has the exclusive right of fishing therein.

" (a) The right of fishing is not severed from the ownership of the fee by grant which does not by its terms either expressly convey the right, or necessarily include it, as, for instance, an unrestricted grant of all water rights or privileges.

" (b) The grant by the owner of the fee of 'mill privileges' carries the right.to the reasonable use of land and water necessary to the operation of a mill, but does not grant any fishing privileges." *Thompson* v. *Tennyson*, 148 *Ga.* 701 (98 S. E. 353).

4. Since the cause is remanded, it is unnecessary to rule upon alleged errors which cannot occur upon another trial.

*Judgment reversed. All the Justices concur.*

No. 3856. April 16, 1924.

Equitable petition. Before Judge Crum. Treutlen superior court. May 22, 1923.

On January 6, 1894, John Spivey executed to N. M. Barwick a lease for the period of 99 years, "for the purpose of erecting a water grits mill, ginnery, etc., on the waters of Red Bluff Creek," of "a sufficient portion of the land for back water . . over his tract of land" adjoining lands of persons named; the stated consideration being that Barwick gave to Spivey "the right to fish himself and family in said waters or mill-pond." On March 15, 1922, Barwick transferred to his wife this lease with all his rights thereunder. A week thereafter Mrs. Barwick presented her petition for injunction and damages against J. A. Spivey, son and heir of John Spivey, alleging that J. A. Spivey had recently cut the dam of the pond, and threatened to cut it again and to drain from his land the water caused by the pond; that since the erection of the dam and mill, about 28 years previously, the mill and pond had been in regular and continuous use and operation; that the pond (the larger part of it being on the plaintiff's land) covered

but five acres of land owned by the defendant, who knew this at the time he took possession, and knew of the lease before mentioned; and that cutting the dam, as threatened, would destroy the pond and the fish therein, as well as the value of the mill. The defendant in answer, denying some of the allegations, set up, among other things, that M. C. Barwick, about six years previously, raised and extended the dam about 135 feet over and across the line of defendant's land; that he never attempted or threatened to interfere with any part of the dam that was originally constructed, which was on Barwick's land, but he did cut the dam on his own land, which was put there without any authority, and which caused the water to back further out on his land and to obstruct him and hinder him from fencing part of his land; that any right to back water on his land was solely for the purpose of operating a "grits mill and ginnery," but it had been converted into a sawmill and cane-mill; and that he had owned the land for 25 years, and the Barwicks had always recognized his right to fish in the pond until a short time before, when they and their agents obstructed and defeated him in the exercise of this right, taking and destroying his boats, nets, and fishing-tackle. He prayed for injunction, etc.

There was a verdict that the defendant be permanently enjoined from cutting, injuring, or in any way interfering with the dam or pond; and that he had the right to fish in the pond, and the plaintiff was enjoined from interfering with him in fishing, and from destroying any boats or tackle he might place in the pond for fishing. This verdict was directed by the court before the defendant "completed his introduction of evidence and before resting his case." He excepted to the refusal of a new trial, alleging, in addition to the general grounds, that it was error so to direct, because: (1) There were issues of fact to be passed on, and the defendant was ready with his witnesses to prove his contention that the part of the dam that was cut was on his property, and that the plaintiff had appropriated it without warrant or authority and against his will, and had not used or maintained it for such length of time as to acquire a prescriptive right. (2) "The issue of fact raised by the defendant, . . that the plaintiff had no authority under said lease to fish in said pond on the land of defendant, was taken from the jury," who should have passed thereon; or a verdict should have been directed, restraining the plaintiff and

her agents from so doing. (3·) The defendant was defeated of his right to prove by evidence that the plaintiff had appropriated and taken his property in violation of law and against his consent. The·judge certified that he directed the verdict before the defendant had put up all his witnesses, by reason of the fact that he was advised, upon inquiry of defendant's counsel, that all of his remaining witnesses would testify upon the same line as the two already examined, and their testimony would be for the purpose of showing that the plaintiff had interfered with defendant's right to fish in the pond; that there was no contention before the court (and none in the pleading) that the plaintiff did not have the right to fish by herself and her agents and servants, in the waters of the pond and in the waters covering the land over which the defendant's predecessor in title had granted the easement for mill and pond. The questions of damages were referred to an auditor.

*L. C. Underwood,* for plaintiff in error.

*W. J. Wallace* and *N. L. Gillis Jr.,* contra.