PURVIS *et al.,* game and fish protectors, *v.* TIPPINS.

No. 13857. NOVEMBER 12, 1941. ADHERED TO ON REHEARING DECEMBER 2, 1941.

252

*Ellis G. Arnall, attorney-general, Emil J. Clower* and *C. E. Gregory Jr., assistant attorneys-general,* for plaintiffs in error.

*M. W. Eason* and *R. N. Odum,* contra.

JENKINS, Justice. The game and fish law (Code, § 45-506), which prohibits the setting of any trap in the waters of this State for catching fish, excepts "private ponds" from its operation. The legislative definition of a "private pond," embodied in the act of the General Assembly from which this section was codified (Ga. L. 1925, p. 306, § 18), defines it to be "one which lies wholly within

the boundaries of a single ownership." Under this definition and the agreed statement of facts, the owner of the land on which the two ponds and the short water runway connecting them were located was operating his fish-trap in a private pond.

An act of the General Assembly, approved August 24, 1931 (Ga. L. 1931, p. 169), by its caption and by express provisions was for the purpose of "repealing section 23" of the act of 1925, and to enact into the game and fish laws other provisions with reference to fishing and seining and taking fish by other devices. This act of 1931, while enacting into the previous laws additional provisions governing seines and traps, did not repeal any of the provisions of the act of 1925 other than section 23, relating to the action of grand juries in putting certain fishing laws into effect. While the present Code, in addition to omitting the repealed section 23, also omits section 18 of the act of 1925, defining a private pond, that the act of 1931 did not purport or intend to repeal section 18 by covering the whole subject-matter included in the earlier statute is manifested by the fact that the Code itself embodies certain portions of the act of 1925, sections 16, 17, and 19 (Code, §§ 45-506, 45-507, 45-508), immediately preceding and following section 18.

An act of the General Assembly, approved March 30, 1937 (Ga. L. 1937, p. 675 et seq.), states in its caption as its purpose "to provide for the payment of a license by certain persons fishing within the State of Georgia, to prescribe penalties for the violation of this act, and for other purposes." Sec. 1 makes it unlawful "for any person to fish in any of the streams, lakes, or ponds, whether tidewater or fresh water, of this State in any county other than that of his residence, or, if in the county of his residence, with any artificial bait, commonly known as plugs, dabblers, wooden minnows, live minnows, flies, spinners, or any other like bait or lure, until such person shall have complied with the following regulations, to wit:" Sec. 2 provides for the procuring of licenses for the sort of fishing described in sec. 1. Sec. 7 is as follows: "(a) Provided, that the owners of private ponds shall have the right to take fish therefrom without procuring any license, and may take them in any manner whatever; (b) a private pond is defined to be any pond, privately owned, on any stream of this State which goes dry of water during any season of the year." It might be that the definition in the act of 1937, just quoted, relates to the purposes

of the particular act of which it is a part; and if so, it could have no bearing upon the provisions of the acts of 1925 and 1931, prohibiting the settings of traps, both of which acts also excepted private ponds from their operation, and one of which, to wit, the act of 1925, provided its own definition of a "private pond." This point, however, is not decided, for the reason that under either or both of the definitions, and the agreed statement of facts, the ponds here involved were private ponds, and as such were excluded from the inhibition imposed by each of the three acts. Clearly the requirement of the definition of private ponds made by the act of 1925 is met by the agreed facts of this case, since the ponds and connecting waterway lie wholly within the boundaries of the petitioner's land. Likewise the agreed facts bring these ponds and waterway within the only other statutory definition of a private pond, as set forth in the act of 1937, since the ponds, privately owned, have no stream regularly flowing in or out of them. The absence of such a regularly flowing stream being the test under the definition in the 1937 act, it thus appears that even if it be assumed that the definition there given, when dealing with the licensing of certain particular kinds of fishing, must be given application to the acts of 1925 and 1931, prohibiting traps except in private ponds, the owner was entitled to the relief sought, since each of the ponds was a "private pond" under either or both definitions combined, and the maintenance of the trap by the owner of the ponds was not unlawful.

It is urged, however, by counsel for the plaintiffs in error, that, "under the definition of the act of 1937, no matter what the other attributes or qualities of a body of water are, if it is not located 'on any stream of this State which goes dry of water during any season of the year,' it is not a private pond;" and that since it is undisputed that neither of the ponds involved is "located on any stream of this State," they can not constitute private ponds. Even though it should be assumed that the original definition of a private pond, embodied in the act of 1925, as "one which lies wholly within the boundaries of a single ownership," has been repealed by the act of 1931 or by the act of 1937, or, as seems to have been the view of the trial judge, even if it should be assumed that the definition of the 1925 act is augmented by the definition of the 1937 act, dealing not at all with fishing traps but only with

fishing with certain specified kinds of bait, and thus, under either supposition, giving effect to the definition of 1937, it could not properly be said that the legislature intended to provide that there could be no private pond unless it is located on some stream of this State which at some season of the year goes dry. To give such a construction would manifestly impute to the legislature the purpose of declaring that any sort of pond or puddle, however small, could not constitute a private pond unless connected with a stream of water which goes dry at some season of the year. The clear and manifest intent and purpose of the legislature in providing the definition in the act of 1937 was to declare that ponds continually connected with the running streams of the State could not be accounted private, for the reason that persons other than the owners of the ponds would have an interest in the fish because of such an outlet, affecting the rights of the general public. The legislature saw fit, however, to provide that such an outlet to a pond would not be sufficient to impress a pond with the quality of public interest, unless the stream remained running throughout the entire period of the year.

*Judgment affirmed. All the Justices concur.*