VICKERS *et al.* v. JONES *et al.; et vice versa.*

Nos. 15310, 15313.  February 21, 1946.

W. R. Mixon and McDonald & McDonald, for plaintiffs.

Eugene Cook, Attorney-General, and R. A. McGraw, Assistant Attorney-General, for defendants.

BELL, Chief Justice. ■ The principal question in this case is whether, under our statutes, residents of this State who fish in a private pond with the consent of the owner may do so without license, just as the owner himself may do, under express exemption. The plaintiffs, the owner and the lessee of an alleged private fish pond, who sought injunction against the director of wild life and others acting under him, assert the affirmative, while the defendants urge the contrary. Still other questions are presented, but this is the basic question, and the first to be determined.

"It shall be a misdemeanor for any person or persons to take fish from any of the fresh waters by means of seines, traps, nets, or similar devices or by means of dynamite, poison, or by other means except with hook and line: Provided, however, that any person in lawful possession of a private pond under lease or ownership, and others with his consent, may fish in said ponds at any time and in any manner." Code, § 45-505; Ga. L. 1931, pp. 169, 171.

At the time this statute was enacted, no licenses whatever were required of private fishermen who are residents of this State; nor did this legislation deal with that subject. Therefore it has no bearing upon the question under consideration.

By the act of 1937, it was provided: (1) That no resident of this State over 16 years of age shall fish in any way or by any means in any of the waters of this State in a county other than the county of his residence (tidewater Georgia excepted), without first procuring an annual license; and (2) that no such person shall fish in any of such waters, whether in the county of his residence or elsewhere, by means of artificial bait or lure, or with seines or nets, without first procuring a license, the charge for such license being $1.25; except that the owners of private ponds shall have the right to take fish therefrom without procuring a license, and may take them in any manner whatever. Ga. L. 1937, pp. 675 et seq. (Code, 1943 Ann. Supp., §§ 45-236—45-247.) Such, we think, is the substance of this statute, although we do not quote or state its detailed provisions.

Accordingly, while the owner of a private pond may fish therein without himself procuring a license, and may take fish therefrom in any manner whatever, other residents of this State over 16 years of age, even though fishing in such private pond as invitees of the owner, would be required to obtain a license—(1) if they are not residents of the county in which the pond is situated, no matter by what means they fish; or (2) if they fish with any kind of artificial bait or lure, or with seines or nets, regardless of their places of residence; there being as to them no exemption from license on account of consent of the owner.

The act of February 8, 1943 (Ga. L. 1943, pp. 128 et seq., Code, Ann. Supp., §§ 45-136—45-254), providing, among other things, that the director of wild life, with approval of the game and fish commission, shall have the power, among others, to fix bag limits, open and closed seasons, and to regulate the manner and method of taking game and fish, and that nothing contained in this act shall be construed as repealing any laws relating to fresh or salt-water fishing, for the regulation, protection, conservation, and licensing, or taxation thereof, which are not inconsistent with this act, and providing further, in section 17, that "Nothing herein contained shall grant, or give to said commission power and au-

thority over strictly private ponds," did not by this latter provision repeal or alter any of the previous laws as stated above with respect to license; the purpose and intent of the quoted provision being simply that such power of regulation should not apply to private ponds, thus preserving the rights of owners as they existed under the former laws.

The decisions in *Thompson* v. *Tennyson,* 148 *Ga.* 701 (98 S. E. 353), and *Spivey* v. *Barwick,* 157 *Ga.* 853 (122 S. E. 594), did not deal with the subject of license, and are not in point.

It follows from what has been said that private ownership of the pond and consent of the owner would both be immaterial in determining whether persons other than the owner would be subject to license under the statute.

■ There is no merit in the contention that the overruling of the general demurrer to the petition adjudicated the contrary with respect to license. The petition alleged that the plaintiffs were about to drain the pond and would receive a large revenue therefrom by charging other persons for the privilege of fishing therein at the time the pond is drained, that the defendants have stated they would stop anyone from going on said pond for the purpose of fishing who did not have a license, and that such threats were made for the sole purpose of intimidating persons who intended to fish in the plaintiffs' pond. These allegations were sufficient, as against a general demurrer, to show that the defendants would thus stop all persons other than the plaintiffs who undertook to go upon the pond without a license, and would not allow any one to take fish therefrom who did not first procure a license, regardless of whether they were subject to license or not; and since, under the foregoing rulings residents of the county in which such a private pond is situated would not be required to obtain a license unless they fished with artificial bait or lure, or with seines or nets, the petition stated a cause of action to enjoin such indiscriminate interference.

A general demurrer goes to the whole pleading which it attacks and should be overruled if any part of such pleading is good in substance. *Blaylock* v. *Hackel,* 164 *Ga.* 257 (5) (138 S. E. 333); *Calbeck* v. *Herrington,* 169 *Ga.* 869, 873 (2c) (152 S. E. 53). Consequently, the overruling of the general demurrer did not necessarily constitute an adjudication that any person who fished

in the pond with the plaintiffs' consent would be exempt from license; nor was there anything to show that this question was actually adjudicated by such judgment. *Draper* v. *Medlock,* 122 *Ga.* 234 (50 S. E. 113, 69 L. R. A. 483, 2 Ann. Cas. 650).

■ The interlocutory injunction which was granted, and to which neither side excepted, restrained the defendants from interfering with the plaintiffs in cutting the dam, and from interfering with any person who shall fish in the pond at that time, such injunction to become effective only upon the plaintiffs giving a good and sufficient bond payable to the defendant director, conditioned as follows: "That plaintiffs will pay to Charles N. Elliott, director of the Game and Fish Commission, the sum of $1.25 per person for each person who is permitted to fish in said pond at the time the same is being drained, who has no license under the laws of Georgia to do so, in the event of final adjudication it shall be decreed that such persons are required by the laws of Georgia to obtain license to fish in said pond at such time. Should it be finally decreed in this case that it is necessary for persons fishing in the pond to obtain license to do so under the laws of Georgia, and should the plaintiffs pay the sum of $1.25 per person for those who were unlicensed, then in that event the bond is to be void, else of full force and effect." The plaintiffs executed and filed a bond, which has been treated by the parties as conforming to this order.

By an amendment to their answer, the defendants sought a judgment against the principals and the sureties upon this bond, in the sum of $737.50, representing a license of $1.25 each for 590 persons who were allowed to fish in the pond, and who it was alleged were subject to such license fees. This amendment was allowed over objections of the plaintiffs, wherein they contended, among other things, that judgment could not be taken upon such bond, except in an independent suit, and that the amendment is not germane.

"It shall be lawful to enter judgment against principal and sureties at the same time, as in cases of appeal, in all cases in law or equitable proceedings when a bond has been given by the losing party conditioned to pay the eventual condemnation money in said action, and it shall not be necessary to bring suit upon said bond." Code, § 103-209. Under this law, the bond must be an

eventual condemnation money bond in order that judgment may be entered thereon in the particular case in which it was given, that is, without an independent suit. Section 6-105. Since a bond of that character is given merely as security, necessarily there must be some independent liability that is thus secured, and under these statutes it must be one for which judgment may be taken against the principal in the identical case, even if the bond had not been given. If the bond itself creates the only liability, it is not an eventual condemnation money bond, and a recovery thereon can be had only in an independent suit. *Odell* v. *Woolen,* 38 *Ga.* 224; *Rountree* v. *Rutherford,* 65 *Ga.* 444 (2); *Planters' & Miners' Bank* v. *Hudgins,* 84 *Ga.* 108 (10 S. E. 501); *Offerman &c. Railroad Co.* v. *Waycross &c. Railroad Co.,* 112 *Ga.* 610 (37 S. E. 871); *Jordan* v. *Callaway & Co.,* 138 *Ga.* 209 (75 S. E. 101); *United States Fidelity & Guaranty Co.* v. *Tucker,* 165 *Ga.* 283 (2) (140 S. E. 866).

Nothing to the contrary was ruled in *American Liberty Fire Insurance Co.* v. *McGlothin,* 165 *Ga.* 173 (3) (140 S. E. 354), where the bond itself provided, in conformity with the order, that judgment might be entered thereon as in case of appeal. The facts in *Harrell* v. *Kutz,* 22 *Ga. App.* 235 (95 S. E. 717), and *Smith* v. *Newsome,* 26 *Ga. App.* 743 (107 S. E. 269), were also materially different from those of the present case, as shown by the decisions in those cases.

Under the facts of this case, the plaintiffs would not have been liable to the defendants for suing out the injunction; nor, except for the bond, would they be liable for the license fees due by their invitees. Consequently, the claimed liability against the plaintiffs arose solely in virtue of the bond, and the bond having contained no agreement that judgment might be taken thereon in the case, an independent suit would be necessary.

See, in this connection, *Hussey* v. *Neal,* 49 *Ga.* 160; *Ellis* v. *Millen Hotel Co.,* 192 *Ga.* 66 (14 S. E. 2d, 565); *Werk* v. *Big Bunker Hill Mining Corp.,* 193 *Ga.* 217 (17 S. E. 2d, 825); Rieger *v.* Knight, 128 Md. 189 (97 Atl. 358, L. R. A. 1916E, 1277); Tenth Ward Road District No. 11 *v.* Texas & Pacific Railway Co., 12 Fed. (2d), 245 (45 A. L. R. 1513, Ann. 1517); Greenwood County *v.* Duke Power Co., 107 Fed. (2d), 484 (131 A. L. R. 870); 43 C. J. S. 1067, § 288; 28 Am. Jur. 510-529, §§ 335, 355, 356.

We thus reach the conclusion that it was error to allow the amendment.

■ Under the rulings in the preceding division, there was error also in the final judgment or decree, in so far as it contained a money judgment on the bond. But, in view of the undisputed facts, as shown in the bill of exceptions and the record, the decree was not otherwise erroneous for any reason urged; and this is true notwithstanding the special verdict finding that the pond was a private one. The rulings made in the instant case accord with the decision in *Purvis* v. *Tippins,* 193 *Ga.* 251 (17 S. E. 2d, 743).

The order allowing the defendants' amendment should be vacated, and the final decree should be amended by striking therefrom the part that gave a judgment on the bond.

■ In view of the construction that we have placed upon the petition, as indicated in the second division, the court did not err in overruling the general demurrer of the defendants, as insisted in the cross-bill of exceptions. The case does not come within the rule that equity will not intervene to enjoin a criminal prosecution. *Great Atlantic & Pacific Tea Co.* v. *Columbus,* 189 *Ga.* 458 (6 S. E. 2d, 320); *City of Albany* v. *Lippitt,* 191 *Ga.* 756 (13 S. E. 2d, 807); *Braddy* v. *City of Macon,* 194 *Ga.* 871 (1) (22 S. E. 2d, 801).

*Judgment affirmed in part and reversed in part, on the main bill of exceptions; affirmed on the cross-bill of exceptions. All the Justices concur, except Head, J., disqualified, and Wyatt, J., who dissents as to the main bill, and concurs as to the cross-bill.*