1. By the statutes of this State applicable to private fishermen, it is provided: (1) that no resident of this State over 16 years of age shall fish in any way or by any means in any of the waters of this State in a county other than the county of his residence (tidewater Georgia excepted), without first procuring an annual license; and (2) that no such person shall fish in any of such waters, whether in the county of his residence or elsewhere, by means of artificial bait or lure, or with seines or nets, without first procuring a license, the charge for a license being $1.25; except that the owners of private ponds shall have the right to take fish therefrom without procuring a license, and may take them in any manner whatever.
(a) Under this law, the facts that a pond may be a private one, and that the owner may consent for other residents of this State to fish therein, would be immaterial in determining whether such other persons would be subject to license, there being as to them no exemption from license as in case of the owner.
2. In this suit by the owner of an alleged private fish pond and her lessee, seeking an injunction against the director of wild life and others acting under him, the judgment overruling the defendants' general demurrer did not, in view of the petition as a whole, necessarily adjudicate that all persons who fished in the pond with the plaintiffs' consent would be exempt from license; nor was there anything to show that such question was actually adjudicated by the judgment on demurrer.
3. "It shall be lawful to enter judgment against principal and sureties at the same time, as in cases of appeal, in all cases in law or equitable proceedings when a bond has been given by the losing party conditioned to pay the eventual condemnation money in said action, and it shall not be necessary to bring suit upon said bond." Code, § 103-209. Under this law, the bond must be an eventual condemnation money bond in order that judgment may be entered thereon in the particular case in which it was given, that is, without an independent suit. The injunction *Page 339 
bond given by the plaintiffs in this case was not an eventual condemnation money bond, within the meaning of the statute, and a recovery thereon could be had only in an independent suit. The court therefore erred in allowing the defendants' amendment seeking recovery on the bond.
4. Under the preceding ruling, there was error also in the final judgment or decree, in so far as it contained a judgment on the bond.
5. The court did not err in overruling the general demurrer to the petition, as contended by the defendants in their cross-bill of exceptions.
 Nos. 15310, 15313. FEBRUARY 21, 1946.
On September 13, 1944, Mrs. Lilla Vickers and E. C. Vickers filed an equitable petition in the Superior Court of Irwin County against Charles N. Elliott, director of the State Game and Fish Commission of the State of Georgia, Fred Brewer, an assistant director, and S. L. Jones, a wild life ranger and protector of said commission, alleging substantially: Mrs. Lilla Vickers is the owner, and E. C. Vickers is the lessee, of all the land on which is located a private pond known as Lake Beatrice in Ben Hill County. E. C. Vickers has the right to all the profits that might arise from the operation and use of said land and pond. Said pond is maintained by reason of a large dam being erected, which controls the waters of said pond, and owing to excessive rains during the year 1944, said dam has become undermined, and in order to properly repair said dam it is necessary that the water be drained from said pond. For a long number of years both plaintiffs have charged for the privilege of fishing in said pond, and this has become a large source of revenue for them. They have a substantial property right in said pond and the fish therein, and if they are permitted to operate said pond as they see fit, they will receive substantial financial benefit. The plaintiffs have the right to control and operate said private pond in such way as they see fit, without molestation or interference on the part of anyone. It is their intention to open said pond to the public to fish therein for the payment of a fee within the next two or three weeks. A large number of people have indicated to the plaintiffs their intention to avail themselves of the privilege of fishing in said pond.
Said defendants, Jones and Brewer, acting under the direction of Charles N. Elliott, director as above set out, have stated that they will stop anyone from going on said pond for the purpose of *Page 340 
fishing who does so without a license, and that they will cause warrants to be issued for every such person who attempts to go on said pond for such purposes, and have stated that they will not permit the plaintiffs to allow anyone to take fish from said pond without procuring a license. The plaintiffs have a right to permit anyone to go on their lands and fish in said pond without procuring any license, because the same is a private pond and subject only to the control of the plaintiffs. Several years ago, they were interfered with by officers and agents of the State of Georgia in attempting to arrest inviters who had gone on said land for the purpose of fishing and paying for the privilege thereof, and at that time had to procure an injunction in order to protect their rights.
The acts of said defendants are in defiance of law and will be in utter disregard of the plaintiffs' rights, and such threats made by the defendants are for the sole purpose of intimidating those parties who intend to fish in the plaintiffs' private pond. This is the time of year in which said ponds are drained and fishing is permitted, and unless the plaintiffs are permitted to operate their pond at the present time the same will be useless to them until next year. It is necessary that said dam be repaired, and if they are permitted to charge fees for the privilege of using said pond when said water is drained, this will be, as above set out, a substantial financial benefit to them; but if they are not permitted to so charge fees and permit people to use said pond without molestation on the part of the defendants, they will suffer irreparable damage and loss, and there will be no way to compute their damages because the same cannot be computed accurately.
The plaintiffs prayed: (a) for process; (b) "that all of said named defendants, their agents, employees and associates be temporarily restrained and enjoined from interfering with petitioners' rights in and to said pond and from arresting or taking out warrants for any person fishing on said pond by and with permission of petitioners, and that said defendants . . be temporarily enjoined from going . . on the lands of petitioners or committing trespasses thereon, and from interfering with any person who may lawfully go on said lands and ponds of petitioners by and with their consent; (c) that petitioners have an interlocutory injunction and a permanent injunction against the defendants *Page 341 
. .; and that they have such other and further relief as may seem meet."
The petition was presented to the judge on September 12, 1944, at which time a temporary restraining order was granted. The defendants filed a general demurrer to the petition, which was overruled on September 16, 1944. They also filed an answer, in which they specifically denied the plaintiffs' allegations, (1) that Lake Beatrice is a private pond, and (2) that the plaintiffs "have a right to permit anyone to go on their lands and fish in said pond without procuring any license because the same is a private pond and subject only to the control of petitioners." It was also alleged in the answer: The defendants are officers of the State, charged by law with the duty of enforcing the State laws relating to game and fish, and are not seeking to deprive any person of the right to fish in said stream in any manner prescribed by law, but are only seeking to enforce the laws of the State for the benefit of all. It is unlawful for any person to fish in any of the streams, lakes, or ponds of this State in any county other than that of his residence, or if in the county of his residence with any artificial bait, or by seines or nets, without first obtaining a license to so fish and paying the fee prescribed by law. In cases of private ponds, only the owners are permitted to fish therein without a license. The plaintiffs intend, for the purpose of violating the game and fish law, to withdraw the waters from said pond, and to encourage the public to fish in an illegal manner, and without first complying with the laws of this State, and by so doing they are greatly retarding the progress of preserving for the people of the State the fish that restock its streams, and by encouraging the people to violate the laws of this State, they are making it impossible for the defendants to perform their legal duties, or to protect the public. If the plaintiffs are allowed to carry out their unlawful purpose, it will injure and damage the public, and will retard the enforcement of the laws.
"Wherefore, defendants having fully answered plaintiffs' petition, pray that the temporary restraining order heretofore granted be vacated and set aside and the interlocutory injunction be denied. Defendants further pray that said plaintiffs be restrained permanently from draining said pond and from violating the game and fish laws, and from maintaining a dam across said stream in violation of the law." *Page 342 
On September 23, 1944, after hearing evidence, the judge granted an interlocutory injunction, "conditioned upon plaintiffs entering into a good and sufficient bond to be approved by the clerk of the superior court . . in the sum of $1250, conditioned that plaintiffs will pay to Charles N. Elliott . . the sum of $1.25 for each person who is permitted to fish in said pond at the time the same is being drained, and who has no license under the laws of Georgia to do so, in the event of final adjudication it shall be decreed that such persons are required by the laws of Georgia to obtain license to fish in said pond at such time." The plaintiffs thereupon gave a bond, with F. M. Taylor and J. W. Vickers as sureties.
On July 2, 1945, the defendants offered an amendment to their answer, reciting the granting of the aforesaid interlocutory injunction, and the giving of the said bond. The amendment also alleged: The plaintiffs "advertised a day when said pond would be drained, and invited the public to fish therein. At such time and on such occasion, 590 persons who did not hold a license as required by law engaged in fishing in said pond. A list of the persons who did not hold a license permitting them to fish as required by law, and who fished on said occasion, is hereby attached and made a part hereof and is marked Exhibit B. . . Defendants allege and contend that under the law of this State each of said persons was required to obtain a license and to pay therefor $1.25 before engaging in fishing in said water, and that because of the bond entered into . . plaintiffs are indebted to Charles N. Elliott, director of the State Game and Fish Commission . . in the sum of $737.50, for which sum defendants pray judgment against plaintiffs and their surety. Wherefore, defendants pray that the above amendment be allowed and ordered filed, and that judgment be entered against plaintiffs and their surety for said sum." On July 2, 1945, this amendment was ordered filed "subject to demurrer."
The plaintiffs objected to the allowance of this amendment upon the grounds: (1) It was not germane to the action. (2) The question of damages which the defendants might have sustained by the issuance of said interlocutory injunction could not be determined in the present action, and could not be determined until after the final trial of this case. (3) The defendants would have *Page 343 
no cause of action on the bond given under said order until this case has been finally disposed of and a judgment or decree has been entered in favor of the defendants. (4) The surety on said bond is not a party to the present proceedings, and no judgment could be obtained against him on said bond in the present action, as he is not a party to the same. These objections were overruled.
On the final trial, after the introduction of evidence by both parties, the judge submitted to the jury only the question as to whether or not the pond referred to in the petition was a private pond. The jury returned a verdict finding that the pond in question was a private pond, whereupon the following decree was entered:
"The pleadings in the above-stated case presented two issues, one of fact and one of law, for determination, and the issue of fact was referred to a jury who found the issue in favor of the plaintiffs, the verdict being to the effect that Lake Beatrice is a private pond. The issue of law being whether persons other than owners of private ponds are required by statute to secure from the State Game and Fish Commission a fishing license to authorize persons other than the owner to fish in private ponds was determined by the court, and the court finds that, as a matter of law, the statutes require all persons other than owners or lessees to secure a license and pay the fee therefor in order to be authorized to fish in a private pond. It being admitted and agreed by the parties that 590 persons who did not have a license authorizing them to fish in Lake Beatrice did on October —, 1944, fish and take fish from Lake Beatrice by the use of seines and nets. An order was granted by this court on September 16, 1944, enjoining defendants from interfering with said 590 persons and from attempting to collect the license fee from such persons, conditioned upon plaintiffs giving bond and surety in the sum of $1250. Plaintiffs with F. M. Taylor and J. W. Vickers, as surety, executed and filed said bond as a part of the record of this case, wherein they bound themselves to pay to the State Game and Fish Commission the sum of $1.25 for each person who fished in said lake at the time it was drained without first obtaining a license, and further conditioned that the law required a license by such person.
"Therefore, it is considered, ordered, adjudged and decreed *Page 344 
that Lake Beatrice is a private pond, and that plaintiffs, as owner and lessee, be and they are hereby authorized to take fish therefrom by means of seines . . or other means, and defendants, their agents and employees, are hereby enjoined and restrained from interfering with said owner and lessee, and parties" authorized "by them, from taking fish from said Lake Beatrice by means of seines . . or other means. The owner and lessee are hereby authorized to fish in said lake without first obtaining a license.
"It is further considered, ordered, adjudged and decreed that it is unlawful for all persons other than the owner and lessee of said lake, to fish or take fish from said lake by seines, nets, and artificial bait . . without first paying a license fee of $1.25 to the State Game and Fish Commission and securing therefrom a license to so fish; and defendants, their agents and employees are hereby permitted to visit said lake for the purpose of checking persons fishing therein to determine whether or not they have complied with the license law, and for the purpose of enforcing the license law. It is further ordered and adjudged that the defendants, for the State Game and Fish Commission, do have and recover of plaintiffs and their surety on bond as of file in this case, the principal sum of $737.50 to cover license fee of $1.25 for each of the said 590 persons who admittedly fished by seines and nets in Lake Beatrice when same was drained without first obtaining a license to do so and without first paying the license fee therefor."
On July 27, 1945, the judge certified exceptions pendent lite of the plaintiffs, assigning error on the overruling of their objections to the allowance of the defendants' amendment to their answer; and in a final bill of exceptions sued out by the plaintiffs, error is assigned on (1) such exceptions pendent lite and the ruling therein complained of, and (2) the final decree entered in the case, the exceptions to such decree being as follows: (a) Said decree is contrary to law. (b) Said decree did not conform to and follow the verdict. (c) Although the verdict of the jury was in effect a finding in favor of the plaintiffs, the decree was in effect in favor of the defendants. (d) Said verdict did not authorize the entering up of a decree of judgment on the bond. (f) Said decree permits the defendants, their agents and employees to visit the pond referred to in the original petition for the purpose of *Page 345 
checking the persons fishing therein to determine whether or not they have complied with the license law and for the purpose of enforcing the license law, which portions of said decree were not authorized by the verdict, because the verdict having determined that the pond in question is a private pond, said defendants would have no jurisdiction whatsoever over said pond according to the laws of Georgia, and therefore the court would have no authority to grant said defendants such permission to visit said pond for the purposes set forth in said decree. (g) In said decree the court failed and refused to grant to the plaintiffs the relief prayed for in their petition, and refused to grant a permanent injunction against said defendants from going in, upon, or on the lands of the plaintiffs or permitting any trespass thereon, and from interfering with any person going on said land lawfully by and with the consent of the plaintiffs.
On September 19, 1944, the judge certified exceptions pendent lite of the defendants, assigning error on the overruling of their general demurrer to the petition. In a cross-bill of exceptions, the defendants assigned error on these exceptions pendente lite and the judgment therein complained of.
1. The principal question in this case is whether, under our statutes, residents of this State who fish in a private pond with the consent of the owner may do so without license, just as the owner himself may do, under express exemption. The plaintiffs, the owner and the lessee of an alleged private fish pond, who sought injunction against the director of wild life and others acting under him, assert the affirmative, while the defendants urge the contrary. Still other questions are presented, but this is the basic question, and the first to be determined.
"It shall be a misdemeanor for any person or persons to take fish from any of the fresh waters by means of seines, traps, nets, or similar devices or by means of dynamite, poison, or by other means except with hook and line; Provided, however, that any person in lawful possession of a private pond under lease or ownership, and others with his consent, may fish in said ponds at any time and in any manner." Code, § 45-505; Ga. L. 1931, pp. 169, 171. *Page 346 
At the time this statute was enacted, no licenses whatever were required of private fishermen who are residents of this State; nor did this legislation deal with that subject. Therefore it has no bearing upon the question under consideration.
By the act of 1937, it was provided: (1) That no resident of this State over 16 years of age shall fish in any way or by any means in any of the waters of this State in a county other than the county of his residence (tidewater Georgia excepted), without first procuring an annual license; and (2) that no such person shall fish in any of such waters, whether in the county of his residence or elsewhere, by means of artificial bait or lure, or with seines or nets, without first procuring a license, the charge for such license being $1.25; except that the owners of private ponds shall have the right to take fish therefrom without procuring a license, and may take them in any manner whatever. Ga. L. 1937, pp. 675 et seq. (Code, 1943 Ann. Supp., §§ 45-236 — 45-247.) Such, we think, is the substance of this statute, although we do not quote or state its detailed provisions.
Accordingly, while the owner of a private pond may fish therein without himself procuring a license, and may take fish therefrom in any manner whatever, other residents of this State over 16 years of age, even though fishing in such private pond as invitees of the owner, would be required to obtain a license — (1) if they are not residents of the county in which the pond is situated, no matter by what means they fish, or (2) if they fish with any kind of artificial bait or lure, or with seines or nets, regardless of their places of residence; there being as to them no exemption from license on account of consent of the owner.
The act of February 8, 1943 (Ga. L. 1943, pp. 128 et seq., Code, Ann. Supp., §§ 45-136 — 45-254), providing, among other things, that the director of wild life, with approval of the game and fish commission, shall have the power, among others, to fix bag limits, open and closed seasons, and to regulate the manner and method of taking game and fish, and that nothing contained in this act shall be construed as repealing any laws relating to fresh or salt-water fishing, for the regulation, protection, conservation, and licensing, or taxation thereof, which are not inconsistent with this act, and providing further, in section 17, that "Nothing herein contained shall grant, or give to said commission power and authority *Page 347 
over strictly private ponds," did not by this latter provision repeal or alter any of the previous laws as stated above with respect to license; the purpose and intent of the quoted provision being simply that such power of regulation should not apply to private ponds, thus preserving the rights of owners as they existed under the former laws.
The decisions in Thompson v. Tennyson, 148 Ga. 701
(98 S.E. 353), and Spivey v. Barwick, 157 Ga. 853
(122 S.E. 594), did not deal with the subject of license, and are not in point.
It follows from what has been said that private ownership of the pond and consent of the owner would both be immaterial in determining whether persons other than the owner would be subject to license under the statute.
2. There is no merit in the contention that the overruling of the general demurrer to the petition adjudicated the contrary with respect to license. The petition alleged that the plaintiffs were about to drain the pond and would receive a large revenue therefrom by charging other persons for the privilege of fishing therein at the time the pond is drained, that the defendants have stated they would stop anyone from going on said pond for the purpose of fishing who did not have a license, and that such threats were made for the sole purpose of intimidating persons who intended to fish in the plaintiffs' pond. These allegations were sufficient, as against a general demurrer, to show that the defendants would thus stop all persons other than the plaintiffs who undertook to go upon the pond without a license, and would not allow any one to take fish therefrom who did not first procure a license, regardless of whether they were subject to license or not; and since, under the foregoing rulings residents of the county in which such a private pond is situated would not be required to obtain a license unless they fished with artificial bait or lure, or with seines or nets, the petition stated a cause of action to enjoin such indiscriminate interference.
A general demurrer goes to the whole pleading which it attacks and should be overruled if any part of such pleading is good in substance. Blaylock v. Hackel, 164 Ga. 257 (5) (138 S.E. 333); Calbeck v. Herrington, 169 Ga. 869, 873 (2c) (152 S.E. 53). Consequently, the overruling of the general demurrer did not necessarily constitute an adjudication that any person who fished *Page 348 
in the pond with the plaintiffs' consent would be exempt from license; nor was there anything to show that this question was actually adjudicated by such judgment. Draper v. Medlock,122 Ga. 234 (50 S.E. 113, 69 L.R.A. 483, 2 Ann. Cas. 650).
3. The interlocutory injunction which was granted, and to which neither side excepted, restrained the defendants from interfering with the plaintiffs in cutting the dam, and from interfering with any person who shall fish in the pond at that time, such injunction to become effective only upon the plaintiffs giving a good and sufficient bond payable to the defendant director, conditioned as follows: "That plaintiffs will pay to Charles N. Elliott, director of the Game and Fish Commission, the sum of $1.25 per person for each person who is permitted to fish in said pond at the time the same is being drained, who has no license under the laws of Georgia to do so, in the event of final adjudication it shall be decreed that such persons are required by the laws of Georgia to obtain license to fish in said pond at such time. Should it be finally decreed in this case that it is necessary for persons fishing in the pond to obtain license to do so under the laws of Georgia, and should the plaintiffs pay the sum of $1.25 per person for those who were unlicensed, then in that event the bond is to be void, else of full force and effect." The plaintiffs executed and filed a bond, which has been treated by the parties as conforming to this order.
By an amendment to their answer, the defendants sought a judgment against the principals and the sureties upon this bond, in the sum of $737.50, representing a license of $1.25 each for 590 persons who were allowed to fish in the pond, and who it was alleged were subject to such license fees. This amendment was allowed over objections of the plaintiffs, wherein they contended, among other things, that judgment could not be taken upon such bond, except in an independent suit, and that the amendment is not germane.
"It shall be lawful to enter judgment against principal and sureties at the same time, as in cases of appeal, in all cases in law or equitable proceedings when a bond has been given by the losing party conditioned to pay the eventual condemnation money in said action, and it shall not be necessary to bring suit upon said bond." Code, § 103-209. Under this law, the bond must be an *Page 349 
eventual condemnation money bond in order that judgment may be entered thereon in the particular case in which it was given, that is, without an independent suit. Section 6-105. Since a bond of that character is given merely as security, necessarily there must be some independent liability that is thus secured, and under these statutes it must be one for which judgment may be taken against the principal in the identical case, even if the bond had not been given. If the bond itself creates the only liability, it is not an eventual condemnation money bond, and a recovery thereon can be had only in an independent suit. Odell
v. Wooten, 38 Ga. 224; Rountree v. Rutherford, 65 Ga. 444
(2); Planters' Miners' Bank v. Hudgins, 84 Ga. 108
(10 S.E. 501); Offerman c. Railroad Co. v. Waycross c.Railroad Co., 112 Ga. 610 (37 S.E. 871); Jordan v.Callaway Co., 138 Ga. 209 (75 S.E. 101); United StatesFidelity Guaranty Co. v. Tucker, 165 Ga. 283 (2) (140 S.E. 866).
Nothing to the contrary was ruled in American Liberty FireInsurance Co. v. McGlothin, 165 Ga. 173 (3) (140 S.E. 354), where the bond itself provided, in conformity with the order, that judgment might be entered thereon as in case of appeal. The facts in Harrell v. Kutz, 22 Ga. App. 235 (95 S.E. 717), and Smith v. Newsome, 26 Ga. App. 743 (107 S.E. 269), were also materially different from those of the present case, as shown by the decisions in those cases.
Under the facts of this case, the plaintiffs would not have been liable to the defendants for suing out the injunction; nor, except for the bond, would they be liable for the license fees due by their invitees. Consequently, the claimed liability against the plaintiffs arose solely in virtue of the bond, and the bond having contained no agreement that judgment might be taken thereon in the case, an independent suit would be necessary.
See, in this connection, Hussey v. Neal, 49 Ga. 160;Ellis v. Millen Hotel Co., 192 Ga. 66 (14 S.E.2d 565);Werk v. Big Bunker Hill Mining Corp., 193 Ga. 217
(17 S.E.2d 825); Rieger v. Knight, 128 Md. 189 (97 A. 358, L.R.A. 1916E, 1277); Tenth Ward Road District No. 11 v. Texas Pacific Railway Co., 12 F.2d 245 (45 A.L.R. 1513, Ann. 1517); Greenwood County v. Duke Power Co., 107 F.2d 484 (131 A.L.R. 870); 43 C. J. S. 1067, § 288; 28 Am. Jur. 510-529, §§ 335, 355, 356. *Page 350 
We thus reach the conclusion that it was error to allow the amendment.
4. Under the rulings in the preceding division, there was error also in the final judgment or decree, in so far as it contained a money judgment on the bond. But, in view of the undisputed facts, as shown in the bill of exceptions and the record, the decree was not otherwise erroneous for any reason urged; and this is true notwithstanding the special verdict finding that the pond was a private one. The rulings made in the instant case accord with the decision in Purvis v. Tippins,193 Ga. 251 (17 S.E.2d 743).
The order allowing the defendants' amendment should be vacated, and the final decree should be amended by striking therefrom the part that gave a judgment on the bond.
5. In view of the construction that we have placed upon the petition, as indicated in the second division, the court did not err in overruling the general demurrer of the defendants, as insisted in the cross-bill of exceptions. The case does not come within the rule that equity will not intervene to enjoin a criminal prosecution. Great Atlantic Pacific Tea Co. v.Columbus, 189 Ga. 458 (6 S.E.2d 320); City of Albany v.Lippitt, 191 Ga. 756 (13 S.E.2d 807); Braddy v. City ofMacon, 194 Ga. 871 (1) (22 S.E.2d 801).
Judgment affirmed in part and reversed in part, on the mainbill of exceptions; affirmed on the cross-bill of exceptions. Allthe Justices concur, except Head, J., disqualified, and Wyatt,J., who dissents as to the main bill, and concurs as to thecross-bill.